WEST (LUCKETT v.). See Case No. 8,593.

WEST (NEWELL v.). See Case No. 10,150.

WEST (PEIRCE v.). See Cases Nos. 10,909 and 10.910.

---

## Case No. 17,423.

### WEST et al. v. PINE et al.

[4 Wash. C. C. 691.] [1]

Circuit Court, D. New Jersey. Oct. Term, 1827.

EJECTMENT—SOURCE OF TITLE—RECITALS IN DEEDS —LIMITATIONS—REPEAL OF STATUTES.

1. The plaintiff in ejectment need not go further back in deducing his title in the first instance, than the will of a person under whom he claims, who died seised of the land. The law presumes a fee simple estate in the devisor, unless the contrary is shown.
[Cited in Grubb v. Grubb, 74 Pa. St. 34.]

2. Recitals in a deed are binding on the parties to it, and those claiming under them; but not on strangers.
[Cited in brief in Hempstead v. Easton, 33 Mo. 146. Cited in Wiley v. Givens, 6 Grat. (Va.) 283.]

3. Construction of the acts of limitation of New Jersey.

4. A later statute, repugnant to a former one on the same subject matter, so that they cannot stand together, repeals it by implication.
[Cited in U. S. v. Fisher, 109 U. S. 145, 3 Sup. Ct. 156.]

This was an ejectment [by Elizabeth L. West and others against Daniel Pine and others] to recover two hundred and forty acres of land called the "Windmill Tract." After proving that Deborah West, and her husband, Thomas West, lived upon the premises until his death in 1770, and she continued to live on the land, during the residue of her life time, and that she died seised thereof sometime about December, 1778, leaving by her husband Thomas, three children, Charles, the eldest, Joseph and Mary: the plaintiffs' counsel gave in evidence the will of Deborah West, dated the 30th of March, 1777, by which she devises to her sons Charles and Joseph, all her fishing place and land belonging thereto, in fee simple; and, after some pecuniary bequests, she gives to her son Joseph, and to her daughter Mary, all the rest and residue of her estate in fee, to be equally divided between them. It was proved that the length of her residence on the land in dispute, during her marriage and widowhood, was from thirty to forty years. That after her death, her son Charles took possession of the land in dispute, and sold to Daniel Smith, who came into possession; and that the estate has been ever since in the possession of his family, or of those claiming under them. It was further proved, that Joseph died in November, 1779, aged about twenty-four years, leaving two sons, Thomas who died quite young and without issue, and Jo-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

seph who was born after his father's death. That Joseph, the younger, died in the year 1814, leaving issue, the lessors of the plaintiff; then, and still, infants under the age of twenty-one. That there was, during the life of Thomas West, a fishery attached to the windmill tract; after which, another, near to the former, was cleared out; and that the two were afterwards united in one by Thomas West, during his life. The plaintiffs claimed the land in controversy under the residuary clause of Deborah West's will.

The defendants' counsel gave in evidence the will of Thomas West, the husband of Deborah, bearing date the 15th of April, 1770, whereby he devises the plantation whereon he lives (being the land in dispute) to his wife for her life, and after her death, to his son Charles, in fee. Also, the will of Joseph West the elder, dated the 21st of November, 1779, by which he devises his half the fisheries to his wife for life, and after her death, to his son Joseph, in fee. In this will, the testator takes no notice of the windmill estate. Also, a deed from Charles West to Daniel Smith, bearing date the 22d of October, 1782, which, after reciting a conveyance dated in the year 1714, from one Carpenter to Samuel Ladd, for four hundred acres of land, which after the death of Ladd, descended to Deborah West, his heir at law, and that the said Charles West claims title to the two hundred and forty acres conveyed by this deed to Smith, under the will of his father Thomas West, and also as heir at law to his mother Deborah, proceeds to convey the same, viz. the two hundred and forty acres by metes and bounds, except the fisheries, and an acre of ground which he reserves with a general warranty, for the consideration of £2000, for which sum a receipt is given on the deed by the purchaser. This suit was commenced in the year 1822.

The defendants' counsel contended: (1). That the plaintiffs had failed to make out a sufficient title to enable them to obtain a verdict. They have gone no further back than the possession and will of Deborah West, without having shown that Mrs. West had a fee simple interest in this land. So far from having shown this, it is manifest that Mrs. West claimed only a life estate under her husband's will: that Charles claimed under the same will; and it is clear, that Joseph, his brother, from the circumstance of his never having asserted a title to this two hundred and forty acres, nor even mentioned in it his will, did not consider himself as entitled to a moiety of it under his mother's will. From all these circumstances it may fairly be concluded by the jury that, whatever right Mrs. West may originally have had to this two hundred and forty acres, she must have transferred it to her husband, under whose will it passed to Charles West. (2) But if the plaintiffs have shown a good title, it is barred by thirty years' uninterrupted possession of Daniel Smith, and those claiming under him, under a fair bona fide purchase from Charles

West in 1782, who was then in possession, and supposed to have a legal right to the land. See second section of the act of 1787 (Rev. Laws, p. 81). When this purchase was made, and possession taken by Smith, Joseph West, under whom the lessors of the plaintiff claim, was alive, and of full age.

Upon the second point it was insisted by the plaintiffs' counsel in reply—First, that after the 1st of January, 1803, the act of 1787 was repealed by force of the act of 1799 (Rev. Laws, p. 411, §§ 9, 10), and that under the latter act, the plaintiffs were not barred, seventeen years only having run from the death of Mrs. West to the bringing of this suit, after deducting all the years of disability which intervened by the infancy of Joseph West the second, and his children, the lessors of the plaintiff; but, second, the plaintiffs are not barred even by the act of 1787. (1) Because, as the recitals in the deed from Charles West to Daniel Smith were sufficient to put the latter upon inquiry, from which he would have seen that Charles West had no title at all, the purchase can not be said to be bona fide, nor can it be said that the grantor was supposed to have a legal title to the land. (2) The act of limitations did not attach till 1782, at which time, the first Joseph was dead, and his son Joseph being under age, he had five years to commence his suit after the expiration of the thirty years, which happened in 1812. But Joseph the second died in 1814, before the expiration of the five years, at which time, and ever since, his heirs, the lessors of the plaintiff, were, and yet are infants.

Mr. Kinsey and Richard Stockton, for plaintiffs.

Elmer & Wall, for defendants.

WASHINGTON, Circuit Justice (charging jury). There are two questions which arise in this cause. The first is, whether the plaintiffs have shown a sufficient title on which to recover in this suit? If they have, then second, whether that title is barred by the act of limitations.

1. The plaintiffs' title, as laid before you by their counsel, is soon stated. They have proved the uninterrupted possession of the land in dispute by Mrs. Deborah West, from the death of her husband in 1770, till the latter end of 1778, when she died seised, and by her will, after sundry bequests to others, none of which refer to the wind mill estate, she devised all the rest and residue of her estate to her son Joseph and her daughter Mary in fee, as tenants in common. Under this residuary clause, no legal doubt can exist, that Joseph was entitled to an undivided moiety of the land in controversy, and that this right is now vested in the lessors of the plaintiff, unless the objections made to the title by the defendants' counsel be well founded. I hold the general rule upon this subject to be, that a plaintiff in ejectment, who claims as devisee of another is not bound to do more, in the

first instance, in deducing his title, than to show a valid will in his favour, duly made by a person in possession, who died seised of the estate devised. He is not required to go further, and to trace down the title from the proprietor, so as to show a legal title in the devisor, the defendant not setting up a paramount title under the proprietor. The law presumes the person so dying seised, to be entitled to a fee simple interest, unless the contrary be shown on the other side. The quantum of estate, even in a disseisor, is a fee simple, although he is in by wrong. But even if there were weight in the objection to the title of Mrs. West, as it was opened and shown by the plaintiffs' counsel, the defendants have entirely removed it by the evidence given on their part. The recitals in the deed, from Charles West to Daniel Smith, state that the land in controversy in this suit was part of four hundred acres which were conveyed in the year 1714, by one Carpenter to a Mr. Ladd. the father of Deborah West, who dying intestate, these four hundred acres descended to the said Deborah as the heir at law of her father. The facts thus admitted by these recitals, are evidence against the parties to that deed, and all others claiming under them, as much so, as if they had been proved by the plaintiffs in support of their title. It is true that the same deed recites that Charles West claimed under the will of his father, and as heir at law to his mother; but these recitals are no evidence against Joseph West and those claiming under him, they being strangers to that deed; and the deed itself shows that the title was not in the father of Charles West, but in his mother. The will of Deborah West shows, that if Charles supposed himself to be entitled to this land as heir at law to his mother, he mistook his rights, the same having passed by the will of Deborah West to her children, Joseph and Mary. As to the supposed divestiture of Mrs. West's title in favour of her husband, from the circumstances of his having devised the land to his wife for life, and after her death to his son Charles, the possession of Charles upon his mother's death, and the omission of Joseph to claim or to devise this land, there can be nothing in it. Because, if, instead of presumption of the fact from those circumstances, positive proof had been given that Mrs. West had conveyed this land to her husband in any manner not deemed valid by the laws of this state, and that Joseph had always declared his opinion to be that he had no title to this land, such evidence would be insufficient to vest a title to it in Charles, or to divest that of Joseph, if in point of law he was entitled. Titles to real property pass by something much more solemn than presumptions, or even admissions of legal conclusions, contrary to those which the law makes.

The opinion of the court therefore upon the first question is, that a sufficient title in the lessors of the plaintiff is made out to entitle them to recover, unless they are barred by the act of limitations.

There are two acts which have been brought to the notice of the court and jury, both of which are to be considered. The act of 1799 may be dismissed with a single observation, which is, that if this be the only act which is to govern this case, it does not operate as a bar to this suit; inasmuch as twenty years have not run from the time when the right of Joseph West accrued to the bringing of this suit, after deducting the years during which the second Joseph West and his children, the lessors of the plaintiffs, were under the disability of infancy. That this deduction is to be made according to the true construction of this act, we understand to be conceded by the defendants' counsel, and indeed we do not see any satisfactory ground upon which a different construction can be maintained.

There will then remain two questions for consideration. The first is, whether the act of 1787 was repealed after the first of January, 1803, by force of the tenth section of the act of 1799? and if not, then, secondly, whether the plaintiffs are barred by the act of 1787?

First. There is no express repealing clause in the act of 1799 of the preceding act of 1787. But it must be admitted that a latter statute may repeal a former by implication, provided it be a necessary one, from the circumstance that the two statutes are entirely repugnant to each other. But this repugnance must be obvious, and not merely apparent; for the law does not favour repeals of this nature, but requires that both laws shall stand, if they may do so by any fair construction. Now, where is the repugnance between the two acts under consideration? The length of possession prescribed by the first is thirty years, and by the latter twenty. But by the former this possession will not avail the defendant, unless it was commenced or was founded on a proprietary right, &c. or was obtained by a fair bona fide purchase of the land, of some person in possession, and supposed to have a legal title thereto. The saving too is in favour of those who were under the described disabilities at the time when their right or title first descended or accrued, so that if they were not under any disability at that time, the thirty years then began to run, and cannot be arrested in its course, or diminished, by any subsequent disabilities. The act of 1799 is entirely of a different character. It is unimportant under that, whether the defendant, or the person under whom he claims, entered into the possession under an apparent title or tortiously, and the limitation is arrested in its progress by any subsequent disability, the duration of which forms no part of the computation of time. Here then are two acts of limitation. applying to two different subjects, neither of which conflicts with the other, but both are open to the defendant, so that if either suits his case, and is sufficient to defend his possession, he is at liberty to avail himself of it, although the facts of his case may exclude him from the benefit of the other. What greater repugnance is there between the second section of the former and

the ninth section of the latter acts than between the two first sections of the former, the one making sixty and the other thirty years of uninterrupted possession equivalent to a valid title to the land? I confess I can perceive none. But what strongly shows that the act of 1787 has never been considered by the legislature, any more than by the profession, as having been repealed by the act of 1799 is, that in all the revisals of the laws the two acts have been incorporated. My brother judge informs me that the two acts have always been considered in this state as being in force since the 1st of January, 1803, and in the case of Den ex dem. Gardner v. Sharp, at the last October sessions, both the counsel and the court considered the act of 1787 as being in force.

Second. The next question is, whether this action is barred by the act of 1787? The enacting part of the second section of that act is substantially as follows, viz.: "that thirty years' actual possession, uninterruptedly continued by occupancy, descent, conveyance, or otherwise, which possession commenced, or is founded on a proprietary right, &c., or was obtained by a fair bona fide purchase of the land, of any person in possession, and supposed to have a legal title thereto, shall be a bar, &c., and shall also vest an absolute right and title in the actual possessor aforesaid, &c. Now it is not pretended by the plaintiffs' counsel but that the defendants have shown in evidence thirty years' actual possession of this land, in Daniel Smith, uninterruptedly continued from the year 1782, by occupancy or otherwise, which was obtained in that year by a purchase of the land of a person in possession.

But it is insisted, by the plaintiffs' counsel: (1) That the purchase was not bona fide, or of a person supposed to have a legal title to the land. And (2) that since the thirty years' possession could not begin to run but from the date of the deed to Smith in 1782, it could not then begin to run against the second Joseph West, inasmuch as he was then an infant of two or three years of age.

(1) The ground of the first objection is, that Daniel Smith was admonished by the recitals in the deed to him to look into the title he was purchasing; and that, if he had done so, he would have found that Charles had no title to the land he was conveying; and that his omission to make those inquiries placed him in the same predicament as if he were now shown to have been conusant of the defect in the grantor's title. But what part of this deed is it that could excite a suspicion of the validity of the vendor's title, or lead him to search into that title? The will of Thomas West would show that this land was devised by him to his son Charles, but then the recitals showed that Thomas West had no right to make the devise, but that the title was vested in his wife. The other recital, that Charles West claimed as heir at law to his mother was so far from putting Smith upon inquiry, that it was calculated to exclude from his

mind any suspicion of a want of title in West, since the fact that he was the eldest son and heir at law to his mother, was indisputable. That his mother had made a will, or any other disposition of this estate, is not only not stated in the deed, but is kept entirely out of view by the title asserted in Charles West, as her heir at law. There is therefore no ground for the argument that it appears from the recitals in this deed that it was not bona fide, or that Charles was not supposed to have a legal right to this land. It may further be remarked, that the will of Thomas West, the conduct of his widow, of Charles West, and of Joseph West, all tended to induce a supposition, not only in Smith, but generally, that Charles West had a legal right to this land.

(2) Whether, if the construction of this act given to it by the plaintiffs' counsel were correct, it could, upon the facts in this case relieve the plaintiff from the bar of the thirty years' possession, it is unnecessary to lose time in considering; because we are clearly of opinion, that that construction cannot be maintained. It is quite clear from the enacting clause, that the thirty years began to run, not from the time when the possession was taken, but from that when the right commenced; being founded on a proprietary right, &c., or was obtained by a fair bona fide purchase of a person in possession, and supposed to have a legal right. That period, in the present case, was in 1782, when the deed to Daniel Smith was made. We have therefore taken no notice of the antecedent possession of Charles West. But that is by no means the period when the proviso in favour of persons under any of the disabilities operates to avoid the bar, so as to prevent the time from beginning to run in case the disability should have existed at that period. The words of the proviso are, "that if any person, &c., having a right or title to lands, &c., shall at the time of the said right or title first descended or accrued, be within the age of twenty-one years, &c., then such person or persons, and his and their heir and heirs, may, notwithstanding the aforesaid times are expired, be entitled to his or their action for the same; so as such person or persons, or his or their heirs commence or sue forth his or their action within five years after his or their full age, &c., and at no time after." Now the question under the proviso is not, when did the thirty years' actual possession begin to run, but when did the right of Joseph West (the person having right and title to this land) first accrue? There is no question that this was in November or December, 1778, upon the death of his mother Mrs. West, under whose will that title accrued. But Joseph West was at that time of full age, and under no disability. He was not entitled therefore to the benefit of the proviso, and since the limitation then began to run against him, it ran over all the subsequent disabilities, and after the expiration of the thirty years from 1782, the bar against the plaintiffs, or those under whom they claim, became complete.

If then the jury should be of opinion upon the evidence, that the actual possession commenced in Daniel Smith in the year 1782, under a bona fide purchase from one who was supposed to have a legal right to the land in dispute, and that it was continued down by persons claiming under Smith, by occupancy, or otherwise for thirty years before the bringing of this suit, their verdict ought to be for the defendants.

Verdict for the defendants.