MARY STANFORD BRAUE, DWIGHT C. FRASER AND AGNES B. FRASER, HIS WIFE, AND AUDREY CLARK KEAN, PLAINTIFFS-RESPONDENTS, v. CAMILLE A. FLECK (FORMERLY CAMILLE A. MAST) AND ARTHUR H. FLECK, HER HUSBAND, DEFENDANTS-APPELLANTS.

Argued September 10, 1956—Decided November 19, 1956.

(1)

2

4

*Mr. Franklin C. Phifer* argued the cause for the appellants (*Messrs. Hock & Phifer,* attorneys).

*Mr. Warner W. Westervelt, Jr.,* argued the cause for the respondents (*Messrs. Westervelt & Leslie,* attorneys).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal from a judgment in an action to quiet title entered in the Superior Court, Chancery Division, establishing that the plaintiffs-respondents had a fee-simple title in the premises in question and that the claim of the defendants-appellants was barred on June 26, 1949 by the limitations in *N. J. S. 2A* :14–6 and *N. J. S. 2A* :14–7.

We will decide the question presented on its merits.

 The action was brought pursuant to *N. J. S. 2A* :62–1 *et seq.* The purpose of this statute is to afford a remedy in equity to a person who is in peaceable possession where no adequate remedy at law existed, for the purpose of settling the title to land. *Brady v. Carteret Really Co.,* 70 *N. J. Eq.* 748 (*E. & A.* 1906); *McGrath v. Norcross,* 71 *N. J. Eq.* 763, 765, 766 (*E. & A.* 1907). *Cf. Jersey City v. Lembeck,* 31 *N. J. Eq.* 255, 256 (*E. & A.* 1879).

 While under the old practice the final decree of the Court of Chancery awaited the determination of the law courts on the question of the actual title to land, under our present practice and rules where the parties agree or there is no timely application by either party to transfer this part

of the action to the Law Division, the matter can be properly tried and decided in the Chancery Division. *Perlstein v. Pearce,* 12 *N. J.* 198, 201 (1953), and the cases and rules cited there.

It is undisputed that the plaintiffs and their predecessors in title have been in actual peaceable and uninterrupted possession of the premises in question for upwards of 30 years last past.

The defendant, Camille A. Fleck, contended she is an adopted daughter of Augusta M. Mast, who pre-deceased her own mother Georgianna Smith, who died intestate on July 14, 1921. It was stipulated below that on December 10, 1912 a final judgment of adoption was entered granting the adoption of one Elizabeth Rettig to A. J. Mast and Augusta M. Mast, his wife. When Georgianna Smith died intestate she left surviving her as next of kin and heirs at law William A. MacFarland, a son; Anna Rettig, a daughter; Edward P. MacFarland, a son; Elizabeth W. Lowenstein, a daughter, and Camille A. Mast, now Camille A. Fleck.

In the years of 1922 and 1923 all the above-named heirs at law and next of kin and their respective spouses, with the exception of Camille A. Mast, conveyed the three parcels in question in fee simple to the predecessors in title of the plaintiffs-respondents. The date of the last conveyance was August 18, 1923. Camille A. Mast was born June 26, 1908. It was stipulated that she was 13 years of age at the time of the death of Georgianna Smith in 1921. She became of age on June 26, 1929.

The issues raised by the pleadings in this case are whether the claim of title to an undivided one-fifth interest by the defendants-appellants as tenants in common was barred by any of the applicable statutes of limitations. *N. J. S.* 2*A*:14–6 and 7 (the 20-year statute) and *N. J. S.* 2*A*:14–30 and 31 (the 30- and 60-year statutes of limitations), plus the further question whether the disability of infancy of Camille A. Fleck tolled the running of the applicable statute sufficiently to establish her title in the undivided one-fifth interest.

The trial court held that since Camille A. Fleck became of age on June 26, 1929, the 20-year statute, *N. J. S.* 2*A*:14–6 and *N. J. S.* 2*A*:14–7, started to run then and her right of action was barred on June 26, 1949; and as against the claim of the defendants the plaintiffs' titles are good.

The three statutes or sections thereof under consideration here, *N. J. S.* 2*A*:14–30 (the 30- and 60-year section as amended in 1922), *N. J. S.* 2*A*:14–31 (the 30-year statute under color of title) and *N. J. S.* 2*A*:14–6 and 7 (the 20-year statute), differ slightly in language but not in essential purposes from the original statutes enacted in this State relating to the limitation of suits respecting the title of lands. These were the act of June 5, 1787 and the act of February 7, 1799, *Patterson's Laws, pp.* 81, 352.

Statutes of this type are of early origin and had a counterpart in the Roman law. *Blanchard's Treatise on the Statutes of Limitation* (1822), 1 *Law Library* (1833). They in effect give a title by negative prescription. The bar arising from such statutes after uninterrupted adverse possession of corporeal hereditaments for the times fixed by the statute is said to confer a title by prescription; not that a positive right or title is acquired but that the remedy of him who had the right is forever gone. This sort of prescription therefore is not improperly called a negative prescription, whereas on the other hand title to incorporeal hereditaments such as rents, rights of way and common may be acquired by prescription by immemorial usage on the analogy or theory of a lost grant. *Blanchard, p* *5, *45; *cf. Thorpe v. Corwin,* 20 *N. J. L.* 311 (*Sup. Ct.* 1844); *Lehigh Valley R. R. Co. v. McFarlan,* 43 *N. J. L.* 605, 617 *et seq.* (*E. & A.* 1881); *Predham v. Holfester,* 32 *N. J. Super.* 419, 422 (*App. Div.* 1954).

The English statutes fixing limitations to actions or for the recovery of real property, besides confirming the title of the possessors, had the effect of arranging the claimants of land in three different classes; namely, first, as parties claiming the whole fee simple of which they or their ancestors have been disseized; secondly, as claiming particular

8

estates, and lastly, as claiming reversions or remainders expectant on the determination of particular estates. *Blanchard, p. *2.*

It has been uniformly held, since an early period, in this State that our three statutes likewise relate and apply to different subjects neither of which conflicts with the other but both are open to a defendant, so that if either suits his case and is sufficient to defend his possession he is at liberty to avail himself of it, although the facts of his case may exclude him from the benefit of the other. *West v. Pine,* 4 *Wash. C. C.* 691, *Fed. Case* 17,423; *Spottiswoode v. Morris & Essex R. R. Co.,* 61 *N. J. L.* 322 (*Sup. Ct.* 1898), affirmed 63 *N. J. L.* 667 (*E. & A.* 1899); *Model Plan Agency v. Diamond,* 101 *N. J. Eq.* 786 (*E. & A.* 1927).

At the common law, for every complete title to lands two things were necessary: (1) the possession or seizin, and (2) the right of property therein. 3 *Chitty Blackstone* *177. These English statutes of limitations had divers application to the many forms of writs and actions that had been developed over the two centuries in the common law of England respecting the law of title to lands there. The various forms of possessory actions and real actions are discussed in detail in 3 *Chitty Blackstone* *166 to *200; *Blanchard, supra,* 1 *Law Library, supra.* But by the year 1727 all real actions and mixed actions with the exception of the writ of right and the writs of dower and ejectment had been abolished in England for all practical purposes and the action in ejectment had become the common method of trying the title to lands there. 3 *Chitty Blackstone* *194, *200; *Sedgwick & Wait, Trial of Title to Lands* sec. 26; *Blanchard, supra,* *7; *Angell on Limitations* (5th ed.) sec. 336.

In cases where the right of possession was barred by a recovery on the merits in a possessory action or the statute of limitations the claimant in fee simple could sue out a writ of right which was the highest writ in the law, but it would only lie for him who had an estate in fee simple and not for a lesser estate. 3 *Chitty Blackstone* *193.

The action in ejectment, which depended on the right of entry in the person seeking to recover, though not mentioned *eo nomine* in any of the English statutes of limitations was held to be within the statute, 21 *Jac., c.* 16 which provided "none shall make an entry into land but within 20 years after their right or title shall first descend or accrue." *Blanchard, supra,* \*8. So this was the statute of limitations with respect to any possessory action as such, including ejectment. *Cf. Predham v. Holfester, supra,* 32 *N. J. Super.,* at *page* 421.

The statute of limitations which applied to the writ of right was 32 *Henry VIII, c.* 2. Blackstone had said that a possession of 60 years under that statute was a sufficient title against all the world and could not be impeached by any dormant claim whatsoever. 3 *Chitty Blackstone* \*196. This statement of his has been criticised because he only mentioned the limitation of 60 years, and the basis of the criticism is that that statute made a distinction where the disseizin was committed against the demandant himself in which case the limitation was 30 years, and where it was committed against his ancestor in such case the limitation was 60 years; nor was it true where the claimant and demandant had no right to enter within the time, as where an estate tail, or an estate for life or years, continued after the 60 years. *Blanchard, supra,* 1 *Law Library* \*41. *Cf. Content v. Dalton,* 122 *N. J. Eq.* 425, 428 (*E. & A.* 1937).

Seizin and the right of entry in the demandant and an alleged disseizin or ouster by act of occupant or tenant were essential elements of the various writs and actions in England under the statutes. The demandant had to have a present right of entry, so as to devisees, as soon as they obtain seizin under the devise and the vested title and the right of entry were combined in them, it was evident they were in the same situation as other persons who had seizin, and then and only then could they maintain a writ of entry, a writ of right or other like actions as if they had been feoffees, grantees, etc., and seizin had been declared

to them and those connected with them in privity. *Blanchard, supra, p.* *44.

Lord Hardwicke held that a remainder expectant upon an estate for life or years to whom a right to enter or bring ejectment is given by the forfeiture of the tenant for life or years, is not bound to do so; therefore, if he comes within his time, after the remainder attach, it will be good. Nor can the statute of limitations be insisted on against him, for not coming within 20 years after his title first accrued by the forfeiture. 1 *Vesey* 278; *Blanchard, supra, p.* *14.

Such generally was the common law of England when the General Assembly of this colony passed the act of February 10, 1727 entitled, "An Act for the Limitation of Actions," which provided:

"All the statutes now in force in that part of Great Britain called England, concerning the Limitation of Actions Real or Personal, shall be and are hereby declared to be in force in this Province from the publication hereof * * *."

*Allison's Laws* 72. The English statutes are set forth in full in a footnote to this act. See also *Content v. Dalton, supra,* 122 *N. J. Eq.,* at *pages* 434, 435.

This statute was not entirely effective because of the conditions of the lands in the colony and the difference in the practice and forms of action. The nature, extent and the character of the possession of wild and unsettled lands of an adverse holder of the possession was a problem they did not have to meet in England. *Tiffany on Real Property* (1912 *ed.*) *p.* 997.

Real actions including the writ of right had never been in use in the province and could not be conveniently introduced. The action in ejectment was the common form of action used to establish a right of possession or title. Some judges thought that the action in ejectment, being neither a *real or personal action* mentioned in the act of 1727, but a *mixed one,* and concluded that there was no English statute relating to real or personal actions which could be construed to limit or bar this action under certain conditions. By

this mode of construction they opened up the way to the action in ejectment upon every claim which was also within the reach of the writ of right itself.

The act of 1787 was the first act for the limitation of actions as to land, and since the words of the act were very broad, they not only limited the writ of right, strictly speaking, but also all manner of claims founded upon possession unless such possession had been within three score years or fell within the conditions of the second section where the limitation was 30 years. *Den ex dem. Johnson v. Morris,* 7 *N. J. L.* 6, 10 *et seq.* (*Sup. Ct.* 1822).

The first section of the act of 1787 seems to have been predicated upon Blackstone's statement that a possession of 60 years under the statute 32 *Henry VIII, c. 2,* gave a sufficient title against all the world and could not be impeached by any dormant claim whatsoever. This section provided that 60 years actual possession of any lands, *etc.,* uninterrupted, continued by occupancy, *etc.,* shall vest a full and complete right and title in every actual possessor of such lands and shall be a good and sufficient bar to all claims or actions commenced by any person or persons whatever for the recovery of such lands, *etc.*

Thus it did not follow the distinction in the English statute, 32 *Henry VIII, c. 2,* where if the disseizin was committed against the ancestor the limitation was 60 years, and where it was committed against the demandant himself, the limitation was 30 years. Prudence probably dictated the longer period in all cases because of the large expanse of wild and unsettled lands in this State at that time. Our Legislatures down to the present time have continued the 60-year period of such lands. *N. J. S.* 2A:14–30, 31.

The second section of that act stated that 30 years' actual possession of any lands, *etc.,* uninterruptedly continued as aforesaid, wherever such possession commenced or where it is founded upon a proprietary right or where such possession was obtained by a *bona fide* purchaser of such lands of any person whatever in possession of such lands and supposed to have a legal right thereto, was sufficient to bar

all prior rights, titles and conveyances or claims whatsoever not followed by actual possession and shall vest an absolute right and title in the actual possessor or occupier of such lands.

The system of proprietary grants was an extensive part of the then existing system of land titles and is today in certain areas with less extensive effect. The reference to a proprietary right in the statute made it clear that the same degree of proof as to adverse possession was required to sustain a title against a grant of the Board of Proprietors as against an individual owner. *Yard v. Ocean Beach Ass'n,* 49 *N. J. Eq.* 306, 309 (*E. & A.* 1892). Secondly, the provision had the effect of repealing prior statutes as to title acquired by possession. *Leaming and Spicer, Grants and Concessions, pp.* 20, 165.

The qualification in the section that the possession also obtained by a *bona fide* purchaser was necessary because of its effect on the proof of disseizin or adverse possession. This is clearly explained in *Foulke v. Bond,* 41 *N. J. L.* 527, 541 (*E. & A.* 1879), where Mr. Justice Depue said:

"The general doctrine of the law is that fraud in obtaining or continuing possession or knowledge that the party's claim of ownership is unfounded and wrongful, will not deprive him of his title by adverse possession, or relieve the true owner of the consequences of the bar of the statute of limitations, if the possession of the intruder has in fact been adverse and has been asserted by such open and notorious acts of ownership as are essential in the acquisition of title by adverse possession. *Humbert v. Trinity Church,* 24 *Wend., N. Y.,* 587. The common law generally regards disseizin as an act of force, and always as a tortious act. [*Jackson ex dem.*] *Bradstreet v. Huntington,* 5 *Pet.* 402 [8 *L. Ed.* 170]. Disseizin 'ever implyeth a wrong.' *Co. Litt.* 153, b. Possession obtained by a misrepresentation of the nature of the estate under which entry is made being a manifest act of injustice and falsehood, is looked upon as an acquisition of the same nature as a possession gained by open and avowed violence, and so is a disseizin. 3 *Bac. Abr.* 151. The statute of limitations establishes a peremptory and inflexible rule of law which terminates the rights of the legal owner and protects the disseizor in his possession, not out of regard to the merits of the latter's title, but for the reason that the real owner has acquiesced in a possession which was adverse for such a length of time that the statute has deprived him of all remedy for the en-

forcement of his legal title. Possession clandestinely taken and held for the purpose of fraudulently concealing from the real owner, knowledge of the acts of ownership over his property in virtue of which title is endeavored to be obtained, will defeat the effort to acquire title by such means not on any general doctrine of fraud, but for the reason that possession under such circumstances would be devoid of that notoriety of the possession, and of the adverse claim which is necessary to perfect title by adverse possession. The statute makes lapse of time a positive and legal bar in all cases within its provisions. *Thorpe v. Corwin, Spenc.* 319. This is the doctrine of the law in all cases where the adverse possession commences with an actual disseizin.

But a disseizin may be effected by an entry under a deed or a feoffment, which is void in the sense that no title is actually conveyed thereby, and where a party claims a disseizin by virtue of an entry under such a muniment of title, he is claiming the advantage of color of title. In such a case the rule above mentioned is not applied in all its strictness. A party cannot have the advantage of an entry under color of title unless his deed, which gives the colorable title, was obtained *bona fide*. If obtained by fraud or with knowledge that the grantor had no title to convey, the deed will avail the grantee nothing. *Den v. Hunt, Spenc.* 487. But a grantee will not be deprived of the legal advantages of an entry under color of title, unless it be for actual fraud on his part. He will not be prejudiced even though the grantor be justly chargeable with fraud in making the conveyance, unless he personally participated in the fraud. If his deed purports on its face to convey good title and he has accepted it in good faith, he is entitled to the benefits to be derived from an entry under color of title. *Gregg v. Sayre,* 8 *Pet.* 244 [8 *L. Ed.* 932].

\* \* \* \* \* \* \* \*

There is, undoubtedly, a distinction between the possession of a mere intruder without pretence of title, and possession by a person who has entered under a colorable, and, of course, defective title. We have seen that entry under color of title confers an advantage in that it operates, under some circumstances, as a disseizin, and determines the *quo animo* with which the entry was made. Having color of title is also advantageous to the disseizor in giving character to his possession after entry made. The effect of color of title in its relations to the possession of the disseizor, is a question of great importance where the dispute concerns the title to extensive tracts of wild and uncultivated lands."

The phrase in the statute "all prior locations, rights, \* \* \* not followed by actual possession" clearly indicates the statute had the purpose of barring an action in ejectment as such; for an action in ejectment was brought by a person out of possession based upon his asserted title

14

and the constructive possession flowing therefrom, whereas a bill to quiet title must be based upon actual possession in fact as distinguished from constructive possession. *Sheppard v. Nixon*, 43 *N. J. Eq.* 627, 632 (*E. & A.* 1887).

In *Pinckney v. Burrage*, 31 *N. J. L.* 21, 25 (*Sup. Ct.* 1864), Justice Elmer stated that this reference to all prior locations, rights, titles, conveyances or claims not followed by actual possession did not apply to the right or title of a reversioner or remainderman where the possession set up as an adverse right had commenced during the existence of an estate for life, because such right is not a prior right or title for the right and title of such claimant does not accrue until the death of the tenant for life. To the same effect *Content v. Dalton, supra.*

The saving clause as to disabilities in this statute provided that "if any person or persons, having a right or title to lands * * * shall, at the time of the said right or title first descended or accrued" be under the specified disabilities, "then such person or persons, and his and their heir and heirs, may, notwithstanding the aforesaid times are expired [60 and 30 years] be entitled to his or their action for the same, so as such person or persons * * * commence * * * his or their action within five years" after such disabilities are removed "and at no time thereafter." This proviso is similar to the provision of 21 *Jac.*, c. 16, *secs.* 9 and 10 as applied to an action in ejectment in England. *Cf. Pinckney v. Burrage, supra,* 31 *N. J. L.,* at *page* 25; *Content v. Dalton, supra,* 122 *N. J. Eq.,* at *page* 426. This provision of the statute only applies if the periods of actual possession mentioned in the statute have run. It guarantees to the person under a disability to whom "said right * * * first descended or accrued" his right despite the running of the period of the statute but on the removal of his disability or disabilities he must bring his action within five years thereof and at no time thereafter.

Since the writ of right was not used here to establish title there was no reason to follow the statute of 32 *Henry VIII, c.* 2, applicable to the writ of right, or its provisions

with respect to disabilities. Further, that statute had been construed to run against all disabilities except those existing at the time it was enacted. *Angell on Limitations* (*5th ed.*), sec. 476; *Blanchard, supra, p.* \*41; *cf. Content v. Dalton, supra,* 122 *N. J. Eq.,* at *page* 434.

The statute of 21 *Jac., c.* 16, was substantially enacted into our law by the act of February 7, 1899, *Patterson's Laws* 353, and provided in section IX that any person having any right or title of entry into lands shall make his entry within 20 years next after such right or title shall accrue, and if not such person shall be barred from any entry afterwards. And section X barred all real, possessory, ancestral, mixed or other actions for land, *etc.,* within 20 years next after the right or title thereto or cause of action accrued.

But its provisions as to disability differed from those in the statute of 21 *Jac., c.* 16, in that it expressly provided that the time during which the person who had such right or title was under the specified disabilities should not be taken or computed as part of the said limited period of 20 years. The difference was that the English statute provided that notwithstanding the 20-year period had expired the person under the specified disabilities could bring his action or make an entry within ten years next after the disability or disabilities were removed.

But it should be pointed out that in England the action in ejectment was more or less of a possessory action in its early phases and in the possessory action a party was restored to his possession and his possession only. His title to the property eventually was decided by the writ or right, *Den ex dem. Johnson v. Morris, supra,* 7 *N. J. L.,* at *page* 10; 3 *Chitty Blackstone* \*190, \*191, \*193, although in some cases where a lesser interest than a fee simple was involved it was used to try title to land. *Blanchard, supra, p.* \*8.

█ It seems a reasonable conclusion that Judge Patterson who drew this statute did so on the assumption the action of ejectment would be used in all cases where the right of possession or the title to land was involved and both questions could and would be settled in the one action. He knew that

such statutes never ran against a man while he continued in seizin, and to make the length of possession a bar under them it must be a possession adverse and inconsistent with that of the true owner. He also knew that an action in ejectment could only be brought by the owner of the title based upon his constructive possession flowing therefrom, and not on his actual possession and that it was not an action which could be brought by a person in actual possession, however acquired. Statutes of limitations create a defense which, if established, bar an action; they do not create an affirmative cause of action.

He therefore set out in detail the terms and conditions which a defendant in ejectment in possession could take advantage of the bar of the statutes and by clear and unequivocal language in 1787 stated that if the defense was proven and the action was barred, it " 'shall vest a full and complete right and title in every actual possessor' " (sec. 1), "shall vest an absolute right and title in the actual possessor" (sec. 2).

■ The effect of a judgment or decree under these sections, now *N. J. S.* 2A:14–30 and 31, is to establish a full and complete title in the occupier of the lands. *Spottiswoode v. Morris & Essex R. R. Co.*, supra; *Conaway v. Daly,* 106 *N. J. L.* 207 (*E. & A.* 1930); *Gordon v. Lumberville Delaware Bridge Co.*, 108 *N. J. L.* 261 (*E. & A.* 1932).

■ While the statute of 1799 contains no specific reference establishing title nevertheless it has been contrued to mean that a possession adverse for 20 years gives a title by adverse possession—an actual title as distinguished from a mere right of entry. *Den ex dem. Van Wickle v. Alpough,* 3 *N. J. L.* *446 (*Sup. Ct.* 1808); *Cornelius v. Giberson,* 25 *N. J. L.* 1 (*Sup. Ct.* 1855); *Spottiswoode v. Morris & Essex R. R. Co.,* supra; *Foulke v. Bond,* supra, 41 *N. J. L.,* at *page* 541; *Elmore Development Co. v. Binder,* 97 *N. J. Eq.* 126, 131 (*Ch.* 1925), affirmed *El Mora Development Co. v. Horwitz,* 98 *N. J. Eq.* 690 (*E. & A.* 1925).

■ Under both statutes the possession must be an adverse possession as defined by the cases and the statutes do not

run against a remainderman or reversioner until the death of the life tenant. *Content v. Dalton, supra,* 122 *N. J. Eq.,* at *page* 437; *Pinckney v. Burrage, supra; Hall v. Otterson,* 52 *N. J. Eq.* 522, 533 (*Ch.* 1894), affirmed 53 *N. J. Eq.* 695 (*E. & A.* 1895). As to the system of entails, see *Content v. Dalton, supra,* 122 *N. J. Eq.,* at *page* 427.

While our early cases above cited seem to indicate these statutes do not conflict, *cf. Content v. Dalton, supra,* 122 *N. J. Eq.,* at *page* 437, they do differ in their provisions on disability and this makes an important difference in their application. The statute of 1799 does not begin to run against the person to whom the right and title have accrued until the disability is removed and once the statute has commenced running it runs over all subsequent disabilities and intermediate acts. *Dekay v. Darrah,* 14 *N. J. L.* 288 (*Sup. Ct.* 1834); *Den ex dem. Clark v. Richards,* 15 *N. J. L.* 347 (*Sup. Ct.* 1836); *Pinckney v. Burrage, supra,* 31 *N. J. L.,* at *page* 26.

By providing that the time under which a person is under the specified disabilities should not be computed as part of the said limited period of 20 years the statute clearly indicates that it does not run during the period of disability. On the other hand, the proviso as to disabilities under the 1787 statute does run against an existing disability but preserves the right or title which has accrued and gives the person five years from removal of his disability to institute the action, and this seems to be a fundamental distinction as to when each of the statutes is to be applied.

The appellants argue the basic question to be determined on this appeal is whether the trial court based its determination and judgment upon the appropriate statute of limitations, and they argue that the 30- and 60-year statutes, as amended by *L.* 1922, *c.* 188, *N. J. S.* 2A :14–30 and 2A :14–31, are not merely statutes of repose but have the greater force and effect of vesting title in a person complying with these statutes; and since the plaintiffs prayed that they be adjudged to have a perfect title to the lands and premises they were compelled to proceed under the 30-year statute.

18

The answer to this argument is, statutes of limitations as such all have the effect of quieting titles but they do not create rights of action but rather are defenses and bars to rights of action. The appellants here had a right of action in ejectment and could have brought it at any time after their right and title had accrued on the death of her ancestor and asserted her title and constructive possession to support it.

Examination of the early reports in this State indicate that all questions as to the statute of limitations or title, such as are raised here were tried and decided in actions in ejectment, for it was a general rule that a court of equity would not entertain a bill of peace until the right of possession had been established at law. *Brady v. Carteret Realty Co., supra.* There was no action which a person in possession could bring to settle a dispute or an outstanding claim of title. Such remedy was created first by the statute *L.* 1870, *p.* 20; *Rev.* 1877, *p.* 1189, which provided that a person in peaceable possession of lands claiming title thereto which was disputed, and where there was no suit pending to test the validity of such title or claim, could bring a suit in Chancery to settle the title to lands and clear up doubts concerning the same. *Powell v. Mayo,* 24 *N. J. Eq.* 178 (*Ch.* 1873); *Brady v. Carteret Realty Co., supra.* Thus it is clear that the form of action brought to settle such a dispute as to title is not dispositive of the question as to which of the limitations applies to a particular situation. This is a question of substantive law to be decided by the court under the facts in accordance with the correct applicable provision.

The appellants in their answer set up their claim of title in the suit below, and the respondents set up their claim, but the question of title was tried first as it would be in an action in ejectment and the respondents' proof of title was therefore asserted as a defense. The issue here presented is—did the trial court err in holding the respondents' claim was barred by the 20-year statute, *N. J. S.* 2A:14–6 and *N. J. S.* 2A:14–7 as limited by the applicable section on disabilities, *N. J. S.* 2A:14–21?

The right and title of Camille A. Fleck had descended and accrued on the death of her grandmother which occurred on July 14, 1921. The adverse possession or disseizin, however, did not occur until the conveyances out were made by her co-tenants without her joining in. These conveyances amounted to a disseizin. The first parcel was conveyed on May 23, 1922, the second parcel was conveyed on October 22, 1922, and the third parcel was conveyed on August 18, 1923. That such a conveyance out by co-tenants without one joining in amounts to a disseizin was established in the case of *Foulke v. Bond, supra,* in which it was held that in such a situation the 20-year statute applied and that 20 years of adverse possession established a good title in such circumstances.

Mr. Justice Depue said that ordinarily possession by one tenant in common is presumed to be the possession of all. It is with respect to the two essential qualities of the possession, on which title by lapse of time is founded— hostility in fact to the title of the true owner and the notoriety of adverse claim—that the fact of a co-tenancy between the parties becomes an important element. If the parties are strangers to a title, possession and the exercise of rights of ownership are in themselves proof of an ouster of the true owner, whereas in cases of privity of title as subsists between tenants in common, the acts of possession in the absence of evidence to the contrary will be referred to the community of title.

The difference in the rules of law applicable to title by adverse possession as between strangers and as between those who are in privity of title, such as subsists between tenants of a joint estate, is founded on the distinction between an entry which is hostile in its inception and one which becomes so by subsequent acts. Hence, where a grantee has obtained a conveyance of the whole estate from one of the co-tenants, entry made under such title is a disseizin of the other co-tenants, and where one of the co-tenants enters and makes a feoffment in fee of the whole manor this feoffment is not only of the moiety whereof she might lawfully

make a feoffment, but also of the other moiety by disseizin. See also 3 *Chitty Blackstone* \*170.

The common law gave to the feoffment or demise with livery of seizin of the whole estate by one co-tenant, the effect of disseizin of the other co-tenants because of the notoriety of the act of investiture by livery of seizin. Immediately upon feoffment the estate became the property of the feoffee as between him and the feoffer and every other person except the rightful owner, and a long and uninterrupted possession of a certain duration made the title good even against the rightful owner, and to prevent this he must be restored his own seizin within the time limited. The entry of the grantee under such a conveyance is equally evincive of his intention to claim the whole to the exclusion of the other co-tenants, and if the deed be duly recorded, the transaction acquires that notoriety which is the equivalent to the notoriety of livery of seizin and the disseizin becomes complete. *Foulk v. Bond, supra,* 41 *N. J. L.,* at *pages* 537, 540. See also *Sedgwick & Wait, Trial of Title to Lands,* secs. 287, 750; *Angell on Limitations (5th ed.), sec.* 427 *et seq.; Tiffany on Real Property (3d ed.), sec.* 1185, *p.* 533.

The distinction between a disseizin of a remainderman by a life tenant and a disseizin by one tenant in common or his grantee against another tenant in common, mentioned by Mr. Justice Case in *Content v. Dalton, supra,* 122 *N. J. Eq.,* at *page* 438, follows the statement of Lord Hardwicke theretofore mentioned.

■ The provision as to disability now found in *N. J. S.* 2*A*:14–32, only applies, as we have pointed out in speaking of the 1787 act, when the periods of limitation in that statute, 30 and 60 years as amended in both sections, have run and the disability still exists. When the disability ceases an action must be started within five years of the date of the removal of the disability. This statute does not apply to situations where the disability stops during the 30- or 60-year periods.

■ Under the 20-year statute, the statute of 1799, 3 *C. S.* 3169, *secs.* 16 and 17, *N. J. S.* 2*A*:14–6 and 7 and

2A :14–21, the adverse possession did not run during the disability but begins running on the date the disability is removed, so that one under a disability is entitled to 20 years plus the period of disability remaining between the disseizin and the date the disability is removed.

Thus, under the facts in this case, giving credit to the appellant Camille A. Fleck for her disability from the date of each conveyance out to the date of her becoming of age on June 26, 1929, her claim was barred on June 26, 1949, since the respondents and their predecessors in title had been holding adversely to her since the date of the conveyances for periods in excess of the 20-year period between June 26, 1929 and June 26, 1949.

The trial court correctly decided that a full and complete title was therefore vested in the respondents.

Respondents on their part have erroneously asserted that the provisos in N. J. S. 2A :14–32 are applicable only to the limitations contained in N. J. S. 2A :14–31, and not to N. J. S. 2A :14–30 as amended by L. 1922, c. 188. Mr. Justice Case disposed of such a contention to the contrary for the reasons stated in *Content v. Dalton, supra,* 122 *N. J. Eq.,* at *page* 436 *et seq.*

Judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING and JACOBS—5.

*For reversal*—Justice HEHER—1.