# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0433-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

E.V.-G.,

     Defendant-Appellant,

and

A.J.-D.,

     Defendant.

_____

IN THE MATTER OF J.V. and Y.V.,

     Minors.

_____

Submitted June 5, 2019 - Decided July 10, 2019

Before Judges Accurso and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0363-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Jennifer P. Le, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Michelle Frances Mikelberg, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (James Joseph Gross, Designated Counsel, on the brief).

PER CURIAM

Defendant E.V.-G. shot the mother of his children and her friend while his seven-year-old son Joey[1] stood at his side. The children's mother, shot in the face, was seriously injured and her friend died. Joey's five-year-old sister Yvette, while not witnessing the shooting, was nearby and fully exposed to its immediate aftermath. Defendant appeals from an August 16, 2018 order finding he abused and neglected Joey and Yvette, arguing the trial judge relied on the inadmissible complex diagnoses rendered by non-testifying experts in finding the children suffered emotional harm; that the Division of Child

---

[1] This is not his real name. We use fictitious names for the children to protect their privacy.

Protection and Permanency failed to adduce "sufficient competent, material, and relevant evidence to establish imminent danger and substantial risk of harm as to Joey"; and the court's finding as to Yvette was based on a presumption of harm rather than any expert medical evidence of emotional harm produced by the Division. The Law Guardian joins the Division in urging affirmance. Because we find defendant's arguments utterly without merit, we affirm.

The outline of defendant's attack on the children's mother and her friend was provided by the certified police reports of the incident and the Division's investigative summary, both admitted in evidence. Both reports contained statements made by Joey, as did a psychosocial evaluation of the boy performed by the Regional Diagnostic and Treatment Center, which was admitted for the limited purpose of providing Joey's statements to the evaluator.

The shooting took place mid-day in front of the apartment defendant shared with his mother. Defendant and the children's mother were separated and going through a divorce. She lived in another apartment in the same complex and the children went back and forth. When the children's mother came to pick Joey up for a birthday party, defendant walked the boy outside

and got into a heated argument with her and her friend. Joey reported his father pulled his "auntie" to the ground by her hair and shot her in the face. As the boy clung to his father's legs and begged him not to kill his mother, defendant shot her in the face and she fell to the ground. The boy ran to his mother crying, holding her and pleading with her not to die. Defendant was arrested at the scene, and police recovered a nine millimeter handgun used in the attack. One of the officers found Joey nearby crying hysterically. When the officer put his arm around the boy and asked him what was wrong, Joey replied, "my dad just killed my mom."

A Division worker retrieved Joey and Yvette from the prosecutor's office several hours later to arrange for a medical exam and placement with a maternal relative. Joey and Yvette told the worker their father had shot their mother. When the worker asked Yvette, then in kindergarten, how she knew that, Joey interjected that he had told her. The children wanted to go to the hospital to see their mother, but were told she was too ill and they could visit soon. The children's mother was admitted in critical but stable condition, requiring surgery to repair the gunshot injuries to her face and jaw. The children were returned to her custody several weeks later following her release from the hospital.

4

Both children underwent psychosocial evaluations a week or so after the shooting. Joey reported to the clinician performing his evaluation that he was crying when his father shot his mother, saying, "[d]ad, no, no," and grabbing onto his legs to make him stop. He told the clinician he did not want to talk about the shooting because he did not "want to cry." He reported feeling "angry, bad and sad" when the shooting happened and that he thinks about it "all the time." He told the clinician he wished "my auntie didn't die and that my dad did not shoot my mommy." Five-year-old Yvette knew what had happened, telling the clinician that her mother was at "the doctor's" because her father shot her, and that she felt sad knowing her aunt was dead, killed by her father.

The assigned Division caseworker testified at the hearing. Defendant's counsel did not cross-examine her. Defendant did not testify or call any witnesses on his own behalf. The trial judge found Joey's statements about his father's attack on his mother and her friend corroborated by the caseworker's observations of the mother's injuries and the officer's observations of the victims at the scene. She found defendant's actions put Joey in imminent danger and "at an immediate risk of harm." Reviewing the events, the judge found defendant shot the two women, killing one, and severely injuring the

5

other and could have as easily accidentally shot his son in this "very highly charged incident."

The judge further found "an abundance of evidence" that defendant caused Joey "real trauma when he shot the [boy's] mother and the mother's friend in front of him," reflected in the statements the boy made to the Division's clinician. Acknowledging Yvette did not experience the trauma first hand as her brother did, the judge found the kindergartener was made immediately aware of all that took place, resulting in a finding of defendant's abuse and neglect of both children.

We reject defendant's arguments that the record lacked sufficient competent evidence to establish imminent danger and substantial risk of harm as to Joey. Defendant shot two people at close range following a heated argument, killing one of them, while his seven-year-old son clung to his legs begging him not to kill his mother. There is no question but that the trial court's finding that defendant's conduct exposed his son to a substantial risk and imminent danger by acting in reckless disregard of his safety is supported by adequate, substantial and credible evidence in the record. N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002).

6

As to defendant's remaining arguments, the court did not refer to the "complex diagnoses" rendered by non-testifying experts in finding the children suffered emotional harm by their father's shooting their mother and killing her friend, and we reject defendant's argument that the judge's finding as to Yvette rested only on a presumption of harm. The Family Part "need not wait to act until a child is actually irreparably impaired" by parental conduct. N.J. Dep't of Children & Families, Div. of Youth & Family Servs. v. A.L., 23 N.J. 1, 23 (2013) (quoting In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999)). Defendant's children were evaluated less than two weeks after their father shot their mother, before she was even out of the hospital. Based on the statements they made in those evaluations, it requires no stretch of the imagination to conclude, as the trial judge did, that both children were enduring emotional harm, which could certainly be long lasting. See N.J. Div. of Child Protection & Permanency v. A.D., 455 N.J. Super. 144, 164 (App. Div. 2018).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION