## SWARTZ *v.* SHERSTON.

1. WATERS AND WATERCOURSES—INLAND LAKES—RIPARIAN OWNERS MAY USE WHOLE OF SURFACE.

Each riparian owner at an inland lake and his lessees and licensees may use the surface of the whole lake for boating and fishing so far as they do not interfere with the reasonable use of the waters by the other riparian owners.

2. SAME—INLAND LAKE—COMMERCIAL USES.

One riparian owner whose lessee uses the waters of an inland lake in a commercial manner for boat livery and bathing beach cannot be heard in an equity suit to complain against a like use by another riparian owner.

3. ADVERSE POSSESSION—PERMISSIVE USE—HOSTILITY—RIPARIAN RIGHTS.

The permissive use by one riparian owner of the submerged lands of another riparian owner for the purpose of anchoring boats, docks, slides, et cetera, cannot ripen into a prescriptive right, no matter how long maintained, as hostility is of the very essence of adverse possession (3 Comp. Laws 1929, § 13964).

Appeal from Oakland; Holland (H. Russel), J. Submitted June 4, 1941. (Docket No. 44, Calendar No. 41,635.)   Decided October 6, 1941.

Bill by John N. Swartz and H. Emory Buchanan against Charles J. Sherston and Alice M. Sherston to restrain defendants from using the waters of an inland lake and for other relief.   Bill dismissed. Plaintiffs appeal.   Reversed.

*Donald C. Porritt,* for plaintiffs.

*Pelton & McGee,* for defendants.

Bushnell, J. Plaintiff, Dr. John N. Swartz, since 1917 has been the owner of certain lands in the township of Waterford, county of Oakland, located in the northwest fractional quarter of section 30, township 3 north of range 9 east. These lands were subdivided and platted as Swartz's Pleasant Lake Highlands, the plat being recorded in 1925. They lie mainly on the westerly and southerly sides of Pleasant lake, which is an inland lake covering approximately 90 acres of land without an inlet or outlet. Other lands abutting the lake are owned by Mrs. Leland, on the east, and defendants Charles J. Sherston and wife, on the north. A portion of the Swartz subdivision lies on the northeast shore.

The line that divides section 30, in which the Swartz land is located, from section 19, in which the Sherston land is situated, runs across the north part of Pleasant lake a distance of 771.8 feet, so that, according to a survey dated August 17, 1939, a small portion of the land in section 19 belonging to the Sherstons is covered by the waters of the lake. Some of the Sherstons' land lies south of the Pontiac-Lansing highway, which curves around the north shore of the lake. At its greatest distance, the section line is 126.5 feet south of the center line of the highway and 54.5 feet from the water's edge.

Plaintiff H. Emory Buchanan leases Swartz's lots 321, 322 and 323, which are located in the northeast corner of the subdivision of the lake to the east of Sherston's land. Buchanan maintains and operates a refreshment stand, automobile parking lot, boat livery and bathing beach. Forty-two boats owned by Buchanan are maintained on the lake, as is a swimming dock and slides for bathers.

The Sherstons also maintain and operate a refreshment stand, parking facilities, boat livery and bathing beach on their property and have about 18

boats which they rent to the public. They also have a diving dock and bathing slide anchored in the lake near or south of the section line which, like those maintained by Buchanan, are moved from season to season.

Swartz acquired title to his property by deed in 1917 and the Sherstons acquired their property in the same manner in 1914. The Swartz property was surveyed prior to the execution of the plat in 1922. Swartz had assumed that the Sherston land did not run to the edge of the lake but the survey showed that the section line ran through the northerly part of its waters.

Swartz testified that in 1921 he had a conversation with Sherston about the land south of the highway and north of the section line, and that Sherston did not know at the time "that he had any land over there." Swartz informed him of the location of the line according to the survey and suggested that some adjustment be made of their property lines. He offered to trade Sherston three lots of good hard ground if he "would release the other land up there." Sherston was not agreeable to this and wanted the lake frontage divided equally. Swartz said that, shortly after this conversation, Sherston came to his office and "asked permission to float a boat or two on this lake front for the use of his family and himself and immediate friends." Swartz granted this permission, which he said did not specifically include permission to anchor boats, but he understood that the right of anchorage was implied. It should be noted that the greatest depth of the water in section 19 on the submerged Sherston land, according to the survey of 1939, is 1.9 feet.

Disputes between the parties over the use of the lake resulted in Swartz commencing the construction of a fence across the lake on or near the section

line in 1924. Sherston immediately secured an injunction restraining Swartz from erecting or maintaining a fence or obstruction along the boundary line or across the waters of the lake that would prevent boats from using the lake. This chancery suit was begun on July 1, 1924. Swartz filed an answer and cross bill seeking injunctive relief against Sherston. The suit was dismissed for want of progress on September 15, 1925.

Several witnesses testified in the instant case as to the time during which the Sherston diving dock and slide have been anchored in the lake. Sherston and his wife testified that their diving dock was first put in the lake about 17 years ago and, although taken up during the winter, was placed back in the lake each summer since that time.

The trial judge found that there was evidence to indicate that, as early as 1921 or 1922, Sherston built a stand upon the property south of the highway for the purpose of selling soft drinks, sandwiches, et cetera, and that this stand has been licensed by the township board from 1926 to the present time. The court said all of this indicated that Sherston's property has been used commercially for boating, swimming and fishing since 1924. The court further found that, since 1923, the Sherstons have maintained a diving dock on the lake at a point south of the section line, some 150 feet from the shore, the first dock having been built sometime during that year by driving four stakes in the bottom of the lake and two years later it was replaced by a floating dock which has been maintained during the summer season of each year up to the present time; that the slide, partly north and partly south of the section line, has been maintained for some three to five years by the Sherstons; and that the only occasion upon which anyone challenged the right of the de-

fendants to conduct a bathing, boating and fishing resort was when Swartz threatened to build a fence in 1924. The court held that, being riparian owners, the Sherstons and their clientele have the right, so long as they gain access to the waters of the lake over the Sherston property, to use the lake in a manner consistent with the right of riparian owners. The court further found that the dock, located 150 feet from the shore, "has been maintained each season for the period suggested in an open, visible and unmolested manner," and that, because of such maintenance adversely to the interest or claim of Swartz, for a period of more than that provided in the statute (3 Comp. Laws 1929, § 13964 [Stat. Ann. § 27.593]), the Sherstons have acquired a right to maintain docks in the waters of the lake south of the section line and that plaintiffs were not entitled to the relief prayed for in their bill of complaint.

During the trial, Swartz conceded that he had no title to any land, submerged or unsubmerged, south of the highway and north of the section line. However, this concession came only after much testimony, some of which was directed to a claim of ownership of this land by Swartz. Because of this concession, the only question left in the case is: How may the Sherstons use the waters of Pleasant lake south of the section line?

The facts in the instant case are so nearly like those in *Manney* v. *Prouse*, 248 Mich. 655, that we refrain from citation of other authorities. In the *Manney Case* the court repeated the rule stated in *Beach* v. *Hayner*, 207 Mich. 93 (5 A. L. R. 1052), which is applicable here:

"Where there are several riparian owners to an inland lake, such proprietors and their lessees and licensees may use the surface of the whole lake for boating and fishing, so far as they do not interfere

with the reasonable use of the waters by the other riparian owners."

Swartz seeks to restrain the Sherstons from using the waters of Pleasant lake in a commercial manner. The boat livery and bathing beach operated by the Sherstons are no different from that operated by plaintiff Buchanan, Swartz's lessee. Swartz cannot be heard to complain against that which he permits his lessee, Buchanan, to do, for Swartz has no exclusive right to the use of the waters of the lake against other riparian owners, and Buchanan has no greater right than Swartz.

We disagree with the trial judge's conclusion that defendants acquired a prescriptive right of anchorage. Permissive use by the Sherstons of the submerged lands belonging to Swartz for the purpose of anchoring boats, docks, slides, et cetera, cannot ripen into a prescriptive right. *Winans Lake Hills Corp.* v. *Moon,* 284 Mich. 688. To paraphrase *Ruggles* v. *Dandison,* 284 Mich. 338, there was no evidence that the Sherstons ever asserted any use or possession adverse or hostile to that of Swartz that would indicate they claimed it as a matter of right.

"Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession, no matter how long maintained. Hostility is of the very essence of adverse possession." *Ruggles* v. *Dandison, supra.*

The Sherstons did not acquire a prescriptive right to anchor a floating dock, et cetera, on the submerged lands belonging to Swartz, nor do they have, as riparian owners, the right of permanent anchorage on the submerged lands of others. See *Beach* v. *Hayner, supra,* and 67 C. J. pp. 850–852, § 278.

The decree dismissing plaintiffs' bill of complaint is vacated and one may be entered here restraining

defendants from anchoring a floating dock, et cetera, on the submerged lands of plaintiffs. Costs to appellants.

SHARPE, C. J., and BOYLES, CHANDLER, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred.