THE AKRON CANAL & HYDRAULIC CO., APPELLANT, *v.*
FONTAINE ET AL., APPELLEES.

(No. 3532—Decided May 11, 1943.)

*Messrs. Wise, Roetzel & Maxon,* for appellant.

*Mr. Walter E. deBruin* and *Mr. George F. Clayton,* for appellees R. N. Fontaine and The Goodyear Tire & Rubber Company.

*Messrs. Loomis & Caris,* for appellees Ruth Sisler, Donald Sisler, Emmet E. Wegman, Clyde O. Wegman, George A. Wegman, Ira Shanafelt, Owen Shanafelt, Hiram Shanafelt, M. L. Fox and Blanche L. Fox.

*Mr. S. L. Summers,* for appellees A. R. Keggereis, Carl Burtscher, and Karl C. Burtscher as executor.

DOYLE, J. Plaintiff, The Akron Canal & Hydraulic Company, brought this action against various parties, including a corporation and an executor, to recover a judgment restraining them "from keeping for hire; boats, fishing tackle, fish bait and other fishing paraphernalia, for the purpose of letting the same to various and sundry persons for fishing in or boating upon the waters of * * * Fritch's Lake, commonly known as Wingfoot Lake, unless permission first so to do is secured from the plaintiff * * *." The petition further prays for an accounting "of rents, profits and revenues obtained by the defendants * * *; that judgment be rendered declaring that plaintiff has a perpetual easement consisting of the flowage, storage and other rights necessary or requisite to raise the water level of Fritch's Lake upon the lands of each of the defendants, to an elevation not greater than approximately 1149.3 feet above sea level, and to lower the level * * * to an elevation not less than approximately 1140 feet above sea level, included in which easement is the right and privilege at will to flow water over and store water on and to draw water from the lands of each of the defendants within said limitations of 1140 and 1149.3 feet above sea level * * *."

To this petition various defendants answered by general denial. The defense of estoppel was inter-

posed by some in addition to a general denial. Issues were joined by plaintiff's reply.

The Court of Common Pleas determined the issues against the plaintiff on the question of fishing and boating rights, and entered judgment in accordance therewith. An appeal on questions of law and fact perfected by the plaintiff lodges the case in this court for trial *de novo*.

The various instruments of conveyance and the record title to the various parcels of land show that the plaintiff possesses the right to flow and store water in the lake to an elevation of approximately 1149.3 feet above sea level and to lower the level of the lake to not less than approximately 1140 feet above sea level, and has the right to flow water over, store water on, and draw water from, the lands of the defendants within said limitations. And this court determines this right to exist in the plaintiff, subject, however, to the rights of The Goodyear Tire & Rubber Company as reserved in its conveyance of September, 1937, to this plaintiff.

An epitome of some of the evidence is necessary for a discussion of the fishing and boating rights.

The lake in question was originally made by the damming of a stream of water which drained much of the surrounding territory, and from other sources. It was constructed at an early time by the then owner of the property. In 1870 the title to the dam site and to most of the land covered by the lake thus formed was owned by John Fritch. In this year for a valuable consideration he executed an instrument of conveyance to the Akron Hydraulic Company, the present plaintiff's immediate predecessor in title, a part of which instrument is in the following language:

"I * * * do give, grant, bargain, sell and convey unto it the said Akron Hydraulic Company, its assigns and successors, the right and privileges to maintain

and keep up said dam to its present height and to raise the water in said pond at any and all times to a point four feet above the floor at the upper end of the flume or head race to said saw mill also at any and all times the right and privilege to draw the water from said pond down to the level of the bottom of the tail race of said grist mill together with privilege and right to enter upon said lot * * * at any time to wit the said Akron Hydraulic Company, its assigns and successors, and on such place as they shall deem most convenient to make all necessary excavations to enable them to draw the water of said pond down to the level of the bottom of said tail race aforesaid together with, free ingress, egress and regress to and for said Akron Hydraulic Company, its successors and assigns * * *.

"* * * I the said John Fritch do for myself, my assigns, heirs, executors and administrators, hereby covenant and agree to and with the said Akron Hydraulic Company, that the same shall be and is hereby made a perpetual lien and incumbrance" upon said property.

The instrument further provides a reservation of right in the grantor to use the water "when the same shall be over three feet and eight inches above the floor of the flume at the upper end of said flume" for the sole purpose of operating his saw mill "so long as said saw mill shall stand."

By this instrument John Fritch conveyed only such rights as are set forth therein, and retained the fee to the land.

From 1870 until 1917 the plaintiff and its predecessor maintained the dam, and raised and lowered the water, between the prescribed levels, a total of four feet. In the latter year, 1917, a new and higher dam was constructed at and near the site of the old one, which made it possible to raise the elevation of the lake an additional five feet and to increase substantial-

ly the area of the lake (approximate maximum of 522.4 acres).

On or about this time The Goodyear Tire & Rubber Company (one of the defendants herein) purchased certain lands, and secured flooding and storing rights on other lands underlying and adjacent to the lake. In September, 1937, The Goodyear Tire & Rubber Company was the owner in fee simple, by purchase, of the dam site (approximately one acre). On this date it conveyed this one-acre parcel in fee simple to the plaintiff. At about the same time it likewise conveyed to the plaintiff, its successors and assigns, "a perpetual easement consisting of the flowage, storage and other rights necessary and requisite to raise the water level of Fritch's Lake to a highwater mark not greater than approximately 1149.3 feet above sea level, including the perpetual right and privilege at will to flow water over, and store water on, and to draw water from," the 28 parcels of land described therein.

The Goodyear Tire & Rubber Company then owned all of said parcels in fee simple, except the parcel numbered 16 in said conveyance, of which it then owned the undivided one-half interest in fee simple, the other one-half interest being owned by Ruth Sisler. The Goodyear Tire & Rubber Company received a flooding and storage right (by means of an instrument also assigned and set over to The Akron Canal & Hydraulic Company) from J. A. H. Myers and Maude Myers, predecessors in title of said Ruth Sisler and the then owners in fee simple of the undivided one-half interest of said parcel now owned by said Ruth Sisler. Also, by means of this conveyance, The Goodyear Tire & Rubber Company assigned and set over to The Akron Canal & Hydraulic Company all of its right, title and interest in 18 instruments, consisting of flooding and storage rights necessary for the raising of the level of Fritch's Lake to 1149 feet above sea level. This in-

strument further provided and was made subject to
the "condition, covenant and provision" that The
Goodyear Tire & Rubber Company should have the
right to reserve from the additional waters so im-
pounded (approximately 5 feet) the right to the use
of whatever water should be necessary in the operation
of a power plant for the use of the said company and
which plant "it desires to erect or cause to be erected
upon its real estate at Fritch's Lake."

It thus appears that the fee to the land under all
of the water in the lake is in someone other than the
plaintiff (the fee is in the defendants), and that the
plaintiff owns in fee only the acre of land upon which
the dam is located. It also appears that the plaintiff's
rights are confined to those expressly granted by John
Fritch in 1870 and by The Goodyear Tire & Rubber
Company in 1937, and the latter grant is subject to
the right of the Goodyear company to the use of what-
ever amount of water between the 1144- and 1149-foot-
level as is necessary in the operation of a power plant.

From the uncontroverted and uncontrovertible facts
shown by the agreed statement of evidentiary facts,
exhibits and pleadings, we are now called upon to de-
termine the sole remaining question: Is the plaintiff
entitled to restrain the various defendants, individual-
ly or collectively, from using the waters of the lake
for fishing and boating?

It appears that many of the defendants fish and boat
upon all parts of the lake; some rent and hire out boats
and fishing equipment to various persons for the pur-
pose of boating and fishing; and some maintain boat-
houses and buildings for such commercial purposes. It
likewise appears that most of them or their predeces-
sors in title have made such use of the lake since 1870
without objection until the present challenge.

It has long been held in this state that a natural, non-
navigable inland lake is the subject of private owner-

ship, and that the bed of such lake being private property, the public has no right to fish in and boat upon its waters. *Lembeck* v. *Nye,* 47 Ohio St., 336, 24 N. E., 686, 21 Am. St. Rep., 828, 8 L. R. A., 578.

An injunction may be allowed to restrain the unlawful use of such a lake. And the rule which is applicable to lakes is likewise applicable to ponds artificially created by the damming of a stream.

In the instant case, if the plaintiff's claims are tenable, we determine that it is pursuing the proper remedy.

As heretofore stated in part, the lake in question was originally formed by the damming of a small nonnavigable stream, and the impounding of water from other sources, by the predecessor in title of the various defendants who are now the owners in fee of the bottom of the lake and the land surrounding.

It is ancient learning that the right to flowing water is incident to the title to land, and that there is no right of property in such water in the sense that it is the subject of exclusive appropriation and dominion. The property interest is usufructuary. And each riparian owner has the right to have the natural flow of the stream come to his land and to make a reasonable use thereof, subject, however, to a like right of each upper proprietor, and further to an obligation to lower proprietors to permit the water to pass on from his estate unaffected except by such consequences as follow from a reasonable and just use of the water.

The question of the right and title to impounded water on a nonnavigable stream has resulted in some case conflict. The general rule which finds support in many of the leading cases on this subject is well stated in 67 Corpus Juris, Waters, Section 365:

"The building of a dam on a nonnavigable stream does not change the status of the stream; hence a proprietor doing so does not acquire ownership of the waters stored behind his dam, and his rights thereto must

be governed by the rules of law applicable to such rights as he had in the stream before he erected the dam. The rights he acquires in the water dammed back are usufructuary, and are not severable from the land. Thus, while the owner of such dam and its pond, in the absence of rights vested in others by grant, prescription, or otherwise is entitled to the exclusive use of the water stored or the power thereby created, this use of the water must be reasonable and must not unreasonably diminish the natural flow, because the rights of the dam and pond owner are subject to the reasonable use of the stream by other dam owners and riparian proprietors."

With these rules announced, this court is in entire accord.

The impounding of water by means of a dam on a stream is not a reducing of the water to possession in such a sense as to change its legal character and make it property. The principles have been so well established that it requires no borrowed light to determine that water in a nonnavigable stream, or water from such a stream impounded in a lake by a dam, or water impounded from springs or surface drainage, is an incident to the land which gives to such owner of the land certain rights and privileges in the use of the water. If it flows over one's own land it is identified with the realty in such a way as to be a corporeal hereditament, and if the right is to use it as it flows over the land of another it is an incorporeal hereditament. Under either circumstance the right of property is usufructuary only. It is not an ownership in the water but a right to its flow for the various lawful uses to which it may be subjected. This hereditament is incident to the land and therefore passes with it by conveyance, and, for the same reason, is not severable from the land, although the rights to the use of such water may be conveyed by a proper instrument.

It follows, therefore, that a grant of the right to impound water is a grant of but one of the several usufructuary rights that the owners of the underlying lands possess; and under no circumstances can it be a grant of *property* in the corpus of the water as a chattel.

The record in this case shows the plaintiff's rights are to maintain the dam, impound the water and use it as it passes over the dam for the various purposes specified in the instruments of conveyance. The right to fish and boat upon the impounded water is a right which attaches to the owners of the underlying fee, and in this case has not been conveyed to the plaintiff. It may be fairly stated that the right of fishing or boating is not lost to the owners of the fee by a grant or conveyance which does not by its terms convey such right. And a conveyance of a right to the use of the water as contained in the instruments under consideration does not likewise include the right to fish or the right to boat.

In conclusion, we answer the plaintiff's specific claims by stating that, although its water rights permit it to draw water down to a level of approximately 9 feet from the "top surface elevation of the present concrete dam structure," and that it has the rights of flowage, storage and withdrawal of water from this space, such rights do not give the rights of fishing and boating to the plaintiff, as "incident to and appurtenant to the water rights." Also, that the rights of fishing and boating are not "appurtenant to the control over the water," as is claimed by the plaintiff.

A decree may be drawn declaring the rights of the plaintiff as hereinbefore set forth, and denying its prayer for injunction and an accounting.

*Decree accordingly.*

STEVENS, P. J., and WASHBURN, J., concur.