DOUGLAS C. BAKER (AND 23 OTHERS), PLAINTIFFS-APPELLANTS, v. NORMANOCH ASSOCIATION, INC. (AND 10 OTHERS), DEFENDANTS-RESPONDENTS, AND SHERRED A. WILLIS, DONALD C. BAIN, SR., AND ROBERT ARMSTRONG, DEFENDANTS.

Argued October 7, 14, 1957—Decided December 9, 1957.

Mr. *Douglas C. Baker* argued the cause for the plaintiffs-appellants, excepting plaintiffs-appellants Joseph N. Miller and Mabel L. Miller, Harry Peatfield and Ada E. Peatfield.

Mr. *Vito A. Concilio* argued the cause for the plaintiffs-appellants Joseph N. Miller, Mabel L. Miller, Harry Peatfield and Ada E. Peatfield.

Mr. *Francis E. Bright* argued the cause for the defendants-respondents (*Messrs. Steelman, Lafferty & Rowe,* attorneys for defendant Braun; *Mr. James R. Lafferty,* of counsel; *Messrs. Riker, Emery & Danzig,* attorneys for defendants Watson and Gibbons, *Mr. Theodore McC. Marsh,* of counsel; *Messrs. Dolan and Dolan,* attorneys for defendants Normanoch Association, Inc., *et al.*).

*Messrs. Harry R. Walker, Jr.,* and *William A. Lord, Jr.,* attorneys for interposer-*amicus curiae,* Borough of Hopatocong (*Mr. William A. Lord, Jr.,* on the brief).

The opinion of the court was delivered by

BURLING, J.   This is an appeal by 24 of 43 original plaintiffs from a declaratory judgment action seeking a determination of whether the plaintiffs as owners of property adjacent to or nearby Culvers Lake have any rights to the recreational use of the lake.   The Superior Court, Chancery Division, denied plaintiffs' claim for a judgment declaring this right to so use the lake and for injunctive relief against interference by the defendants.   The court entered a judgment pursuant to a counterclaim by defendant, Normanoch Association, Inc., declaring title in the lake to be in the said defendant and granting an injunction against trespass by the plaintiffs.   The Borough of Hopatocong was granted leave to interpose as *amicus curiae* and has filed a brief in the appeal.   Prior to hearing, and while the cause was pending in the Appellate Division, we certified the case to this court on our own motion.

Culvers Lake is a natural body of fresh water comprising some 460 acres located in Sussex County, New Jersey. Recent times have witnessed an expansion of the lake area for year-round residential purposes and as a summer resort. There are presently some 536 cottages contiguous to the lake or in the surrounding area.

Originally the lake and surrounding property were owned by the Board of Proprietors of the Eastern Division of New Jersey.   The record indicates that at least as early as 1767

the Proprietors began granting property adjacent to the lake. These sales continued until by 1851 all of the property surrounding Culvers Lake had been conveyed. The largest conveyances made during the period from 1767 until 1851 were of Great Lot 45 and Great Lot 46 of the Sussex Allotments conveyed by the Proprietors to John Rutherford in 1834. A substantial portion of the present-day area of the lake was contained within the bounds of these allotments, but the Proprietors in the grants to Rutherford expressly reserved the area covered by the waters of Culvers Lake. (There was no evidence introduced concerning the bounds of the lake as it existed at the time of the grants to Rutherford in 1834. Hence, it cannot be determined upon this record whether the lake area included within the allotments at that time was more or less than it is today.)

In 1882 the Proprietors by deed conveyed to one Nathaniel Niles title to the bed of Culvers Lake. The terse description in the deed reads as follows:

"* * * the lands covered by the waters of Culvers Lake with a margin upon the shores of the same three hundred feet beyond high water mark, a map thereof being filed in the (said) office of the Surveyor General at Perth Amboy on the 18th day of August, A. D. 1882."

No metes and bounds description was included in the deed.

A survey map dated June 30, 1882, on file in the office of the Board of Proprietors and made by Benjamin Roome for Nathaniel Niles, entitled "Map of Culvers Lake," was introduced in evidence. The trial court assumed, and we concur, "that it was in fact the map which was filed on August 18, 1882 and was referred to in the Niles deed." Appended to the map was a metes and bounds description.

In 1920 a group of property owners in the Culvers Lake area organized the Normanoch Association, a non-profit corporation for the purpose of acquiring the title to the lake. By subscription they garnered the necessary funds and in 1921 purchased the lake from the then holders of the Niles title, Julia R. Smith and James L. Smith, her husband.

While the deeds intervening between Niles and the Smiths omitted any reference to the Roome survey and metes and bounds description, the deed in 1921 from the Smiths to the Normanoch Association contained in its description the metes and bounds calculations of Roome. In 1929, following a corporate reorganization, the Normanoch Association conveyed to the present defendant Normanoch Association, Inc., a business corporation.

The evidence adduced at the trial indicates that from 1882 until at least 1921 Culvers Lake was used both by the adjoining owners and the general public for swimming, boating, fishing, and skating and driving on the ice. The lake was, to use the expression of one witness, "as free as the air." Moreover, the testimony shows that persons so engaged in the various recreational activities upon the lake were never molested or interfered with by the owners in any way during that period.

Since acquiring title in 1929 the defendant corporation has paid taxes on the lake. During the 1930's and 40's it made various attempts to get adjoining property owners to join or pay dues to the association for the privilege of using the lake. Each season it sent letters to the adjoining property owners requesting that they pay for the use of the lake; at various times they published notices in a local newspaper; they also posted temporary signs indicating that the lake was private property and for the use of members only. In the main these attempts were in the nature of importunings rather than an active assertion of rights. While the association, at least as early as 1935, hired patrolmen for the alleged purpose of insuring that no boats without the association sticker would be permitted to use the lake, there is no evidence that anyone was ever driven from the lake prior to 1951. Ford N. Merring, a patrolman for the defendant from 1946 until 1951, who was called as a witness for the plaintiffs, testified to his duties as follows:

"Well, the first four years we did not bear down on the people. We patrolled the lake. And I went around and got the names of the residents and all the property owners and talked to them and

solicited them for funds, instead of making a levy on them, and asked them to work with us."

In 1951 one of the plaintiffs herein was successfully prosecuted for trespassing on the lake, and thereafter patrolmen for the association stopped boats without stickers on several occasions. It is significant that beginning between 1951 and 1953 many of the plaintiffs paid the association for lake privileges for the first time.

The pretrial order divided the numerous plaintiffs into four classes:

1—Those plaintiffs claiming to own property under the waters of Culvers Lake. They may be divided into two sub-classes as follows: First, those plaintiffs who own property adjoining what it denominated as the Meyer's Cove area. Meyer's Cove is a tract covering some 13 acres underlying the present shoreline of the lake. The area is not located within the Roome survey boundaries of the lake in 1882. Secondly, those plaintiffs whose immediate deeds by their metes and bounds description enter small portions of the lake.

2—Those plaintiffs claiming to own property which extends to the shore line or edge of the lake.

3—Those plaintiffs who own property in the vicinity of the lake.

4—Those plaintiffs who do not own any property at or near Culvers Lake, but who have used the lake for recreational purposes.

The court below held that with the exception of those plaintiffs in the Meyer's Cove area none of the plaintiffs owned land underlying Culvers Lake. Moreover, the judgment below declared title in the lake to be in the association, using the description in the 1921 deed from the Smiths to Normanoch.

Initially we note that title to the 300-foot margin purported to be conveyed by the Proprietors to Niles is not in controversy here, the parties agreeing that such margin had been granted to adjoining owners previous to the Niles deed. Moreover, for the reasons advanced later in this

opinion, we do not pass on the questions of disputed title insofar as it affects the precise boundary. The ensuing approach is predicated upon the undisputed fact that the defendant association holds title to the major portion of the lake.

The first question for determination is whether rights to the recreational uses of Culvers Lake inhere in plaintiffs as members of the general public. For purposes of determining the rights therein, inland bodies of water are divided into two legal classifications, public and private. New Jersey has long used the test of ebb and flow of the tide derived from the English common law to distinguish the two, *Arnold v. Mundy,* 6 *N. J. L.* 1 (*Sup. Ct.* 1821); *Cobb v. Davenport,* 32 *N. J. L.* 369 (*Sup. Ct.* 1867), rehearing 33 *N. J. L.* 223 (*Sup. Ct.* 1868); *Ross v. Mayor &c., Edgewater,* 115 *N. J. L.* 477 (*Sup. Ct.* 1935), affirmed 116 *N. J. L.* 447 (*E. & A.* 1936), *certiorari* denied 299 *U. S.* 543, 57 *S. Ct.* 37, 81 *L. Ed.* 400 (1936); *Bailey v. Driscoll,* 19 *N. J.* 363 (1955); *Schultz v. Wilson,* 44 *N. J. Super.* 591 (*App. Div.* 1957), certification denied 24 *N. J.* 546 (1957). By this test Culvers Lake is a private lake.

*Cobb v. Davenport, supra,* was an action in trespass brought by the plaintiff, owner of a fresh water lake, against defendant for fishing. In holding for the plaintiff, Justice Depue said:

"The policy of the common law is to assign to everything capable of ownership a certain and determinate owner, * * * If capable of occupancy, and susceptible of private ownership and enjoyment, the common law makes it exclusively the subject of private ownership; but if such private ownership and enjoyment are inconsistent with the nature of the property, the title is in the sovereign, as trustee of the public, holding it for common use and benefit.

In pursuance of this policy, by the common law all waters are divided into public waters and private waters. In the former, the proprietorship is in the sovereign; in the latter, in the individual proprietor. The title of the sovereign being in trust for the benefit of the public—the use, which includes the right of fishing and navigation, is common. The title of the individual being personal in him, is exclusive—subject only to a servitude to the public for purposes of navigation, if the waters are navigable in fact." (32 *N. J. L.* at *page* 378)

The rule in this jurisdiction is that the general public have no rights to the recreational use of a private lake, such rights being exclusive in the owner of the bed. *Cobb v. Davenport, supra; Albright v. Cortright,* 64 *N. J. L.* 330 (*E. & A.* 1900); *Kanouse v. Slockbower,* 48 *N. J. Eq.* 42 (*Ch.* 1891), reversed on other grounds 49 *N. J. Eq.* 592 (*E. & A.* 1892); *Hussa v. Indian Lake Community Club,* 62 *N. J. L. J.* 341 (1939); *Fidelity Union Trust Co. v. Cochrane,* 116 *N. J. Eq.* 190 (*Ch.* 1934); *Upper Greenwood Lake, etc., Ass'n. v. Grozing,* 6 *N. J. Super.* 538 (*Ch. Div.* 1949). And while the test for distinguishing between public and private bodies of water is varied in the several states (the majority using the test of navigability in fact) the great weight of authority supports the proposition that small inland lakes are susceptible of private ownership, at least to the extent that the owner or owners of the bed have the sole rights to the recreational uses of the waters. *Lembeck v. Nye,* 47 *Ohio St.* 336, 24 *N. E.* 686, 8 *L. R. A.* 579 (*Sup. Ct.* 1890); *Beckman v. Kreamer,* 43 *Ill.* 447, 92 *Am. Dec.* 146 (*Sup. Ct.* 1867); *Marsh v. Colby,* 39 *Mich.* 626, 33 *Am. Rep.* 439 (*Sup. Ct.* 1878); *Decker v. Baylor,* 133 *Pa. St.* 168, 19 *A.* 351 (*Sup. Ct.* 1890); *Turner v. Selectmen of Hebron,* 61 *Conn.* 175, 22 *A.* 951, 14 *A. L. R.* 386 (*Sup. Ct. Err.* 1891); *Tripp v. Richter,* 158 *App. Div.* 136, 142 *N. Y. S.* 563 (*App. Div.* 1913); *Miller v. Lutheran Conference & Camp Ass'n.,* 331 *Pa. St.* 241, 200 *A.* 646, 130 *A. L. R.* 1245 (*Sup. Ct.* 1936); *Akron Canal & Hydraulic Co. v. Fontaine,* 72 *Ohio App.* 93, 50 *N. E. 2d* 897 (*Ct. App.* 1943); *Patton Park v. Pollack,* 115 *Ind. App.* 32, 55 *N. E. 2d* 328 (*Sup. Ct.* 1944); *Annotation, "Inland Lakes—Boating and Fishing,"* 5 *A. L. R.* 1056 (1920); 2 *American Law of Property,* § 9.49, *p.* 481 (1952); 1 *Thompson on Real Property,* § 78, *p.* 93 (1939); *Note, "Extent of Private Rights in Non-navigable Lakes,"* 5 *U. of Fla. L. Rev.* 166 (1952).

There have been a few recent departures from the general rule in some of the western states. *Elder v. Delcour,* 364 *Mo.* 835, 269 *S. W. 2d* 17, 47 *A. L. R. 2d* 370 (*Sup. Ct.*

1954); *Wash. U. L. Quarter.*, 1955, *pp.* 97–99; 35 *Ore. L. Rev.* 137 (1956), 40 *Minn. L. Rev.* 88 (1955); *Coleman v. Schaeffer,* 163 *Ohio St.* 202, 126 *N. E. 2d* 444 (*Sup. Ct.* 1955); 30 *Tul. L. Rev.* 332 (1956). See also *Lamprey v. Metcalf,* 52 *Minn.* 181, 53 *N. W.* 1139, 18 *L. R. A.* 670 (*Sup. Ct.* 1893) (*dicta*).

The minority view stems from jurisdictions with great numbers of inland waterways where hunting and fishing have become major industries. See 28 *Ore. L. Rev.* 267, 281 (1949); Note, *supra,* 5 *U. of Fla. L. Rev.* Whatever its merit under local circumstances of those jurisdictions, as previously indicated the settled proposition in this State is that the general public has no rights to the recreational use of private lakes.

The only other theory upon which the public may be said to have rights in a lake is by dedication, and the record is devoid of evidence indicating an intention on the part of the owner of the lake to dedicate it to public use. See *Soper v. Conly,* 108 *N. J. Eq.* 370 (*Ch.* 1929), affirmed in part 107 *N. J. Eq.* 537 (*E. & A.* 1930). For a collection of authorities on the dedication of waterways see Comment, 38 *Minn. L. Rev.* 685 (1954).

If the plaintiffs have any rights in the instant case, they are individual only and must come from a grant or prescription.

Thus, do the plaintiffs in Class 2 of the pretrial order, *i. e.,* those whose deeds convey to the shore line or edge, have by virtue of such grants any rights to the recreational use of the lake? The determination of this question rests upon the answer to the question whether the grants by the Proprietors from 1767 to 1851 of property contiguous to the lake and previous in time to Niles passed title to portions of the bed so that the present owners of such adjoining property have littoral rights to the recreational use of the lake.

The common rule of construction or presumption employed in the absence of an expressed intention is that a grant bounding upon a river or stream above tide water carries the title of the grantee *ad medium filum aquae.*

*Arnold v. Mundy, supra; Simmons v. City of Paterson,*
84 *N. J. Eq.* 23, 28 *(Ch.* 1914); *Bailey v. Driscoll, supra,*
19 *N. J.* at *page* 367. But the rule with respect to natural
fresh water lakes and ponds is different. Angell in his
treatise on *Watercourses,* § 41, *p.* 35 (1850), states the rule
as follows:

"When land is conveyed bounding upon a *lake* or *pond,* if it is
a *natural* pond, the grant extends only to the water's edge; but if
it is an *artificial* pond, like a mill pond, caused by the flowing back
of the water of a river, the grant extends to the middle of the
stream, in its natural state."

Although without a direct holding upon this point, our cases
have recognized the rule stated by Angell, that the grant
extends only to the water's edge. See *Kanouse v. Slock-*
*bower, supra,* 48 *N. J. Eq.* at *pages* 49–50; *Fowler v.*
*Vreeland,* 44 *N. J. Eq.* 268 (*E. & A.* 1888), affirming *per*
*curiam* opinion below.

We recognize, as the cited cases indicate, that the
prime consideration in determining the extent of a grant
is the intention of the parties. The burden of proof in
showing such intention is upon the party claiming title,
in this instance, the plaintiffs. Those plaintiffs, who by deed
own to the edge or shore, failed to show that the intention
of the Proprietors was to convey to each contiguous owner
title to a portion of the lake bed. Indeed, the record indicates
the contrary. If valuable rights in the waters had been
conferred upon their remote grantees by the Proprietors, the
present deeds should have contained language to that effect.
In ascertaining the intention of the Proprietors it is signifi-
cant that in the conveyances to John Rutherford in 1834,
the bounds of which contained a portion of the lake, the
Proprietors expressly reserved the area covered by the waters
of the lake. Moreover, in ascertaining the intention of the
parties the ancient deeds must be construed in the light of
the circumstances existing at the time of the grants. The
primary value of Culvers Lake at that time was in its
commercial uses, such as milling and logging, and not for

recreation. It is, therefore, not strange that the Proprietors, while granting adjoining property, would have intended to reserve to themselves title to the lake. For a judicial recognition that at least as early as the 1870's the Proprietors were aware of the fact that they had reserved title to the beds of many of the inland lakes in this State, even though much of the surrounding territory had been conveyed, see *Proprietors of Eastern New Jersey v. Force's Executors,* 72 *N. J. Eq.* 56, 65 (*Ch.* 1896). We conclude that the class of plaintiffs previously referred to have failed to show legally or factually that the grants of property adjacent to the shore of the lake, previous in time to Niles, passed any title to the bed of the lake.

We next consider whether those plaintiffs in Class 1 of the pretrial order, *i. e.,* those claiming to own minimal portions of the bed contiguous to the upland and those owning portions of the lake bed in the Meyer's Cove area, have by virtue of such ownership the right to the use of the entire lake. There are two views on the question. The majority view, that of the common law, is that the owner of the bed has the exclusive right to the use of the waters above and may exclude the other bed owners and fence off his portion. *Commonwealth Water Company v. Brunner,* 175 *App. Div.* 153, 161 *N. Y. S.* 794 (*App. Div.* 1916); *Smoulter v. Boyd,* 209 *Pa. St.* 146, 58 *A.* 144, 66 *L. R. A.* 829 (*Sup. Ct.* 1904); *Leonard v. Pearce,* 348 *Ill.* 518, 181 *N. E.* 399 (*Sup. Ct.* 1932); *Sanders v. De Rose,* 207 *Ind.* 90, 191 *N. E.* 331 (*Sup. Ct.* 1934); 2 *American Law of Property,* § 9.49, *p.* 481.

The minority view follows the civil law rule that each owner of the bed has an easement to use the entire portion of the lake or pond for recreational purposes, subject only to the limitation that it does not unreasonably interfere with the owner of the bed. *Swartz v. Sherston,* 299 *Mich.* 423, 300 *N. W.* 148 (*Sup. Ct.* 1941). Comment, 26 *Minn. L. Rev.* 569 (1942). Thus in *Swartz v. Sherston, supra,* the owner of 1/90th of the lake bed was held to be entitled to use the entire lake, while in *Commonwealth Water v. Brunner,*

*supra,* the owner of 1/384th of the lake bed was limited to that portion.

For the purposes of the present controversy we need go no farther than to hold that where, as here, one party is the undisputed owner of the substantial portion of the bed he may exclude therefrom owners of minimal portions of the bed. These plaintiffs are restricted to the use of such portions of the waters of the lake, the bed of which they may own.

We next consider whether any of the plaintiffs have acquired an easement by prescription to use the waters of Culvers Lake for recreational purposes. Whether such an easement be considered as one appurtenant, in gross, or as a *profit a prendre* makes little difference. See *Restatement, Property,* § 450.

The nature of the user necessary for the creation of an easement by prescription is the same as that for the acquisition of title by adverse possession, *i. e.,* it must be adverse or hostile, exclusive, continuous, uninterrupted, visible and notorious for a period of 20 years. *Cobb v. Davenport, supra,* 32 *N. J. L.* at *page* 385; *Plaza v. Flak,* 7 *N. J.* 215, 220 (1951); *Predham v. Holfester,* 32 *N. J. Super.* 419, 423 (*App. Div.* 1954).

*Cobb v. Davenport, supra,* recognized that the user of a lake for recreational purposes over a 20-year period is deemed to be permissive. Justice Depue there declared:

> "To hold that a right of hunting over another's wild lands, or even over lands under cultivation, was established by showing that the person claiming the right, and those under whom he claims, had at pleasure hunted for game on the premises for the period of twenty years, would be monstrous. Such acts of hunting would be considered to be merely permissive, unless there was clear evidence that they were done under a claim of right, and that the owner knew of such claim, and knowing it, acquiesced in it. * * *
> The same rule must be applied when the right claimed is of fishing."
> (32 *N. J. L.* at *pages* 387–388)

The reason for the rule that the user is deemed permissive was tersely but effectively stated by the court in *Albright v. Cortright, supra,* 64 *N. J. L.* at *pages* 337–338:

"In country life a multitude of acts are habitually committed that are technically trespasses. Persons walk, catch fish, pick berries, and gather nuts *in alieno solo* without strict right. Good-natured owners tolerate these practices until they become annoying or injurious, and then put a stop to them."

In *Plaza v. Flak, supra,* we held that in certain instances in order for a party to establish an easement by prescription it was only necessary that the user be shown to be open, exclusive and uninterrupted by the adverse claimant for the prescription period, at which time a presumption arises that the use was adverse or hostile. But in viewing the various rules relating to the creation of easements by prescription we said the following:

"* * * third, there is a conflicting presumption with the foregoing rule which may arise where the situation and condition of the land and the uses thereof place the property in the category of vacant, unimproved land, unenclosed, where the use is casual rather than customary. Where the land is in that category the use is presumed to have been permissive." (7 *N. J.* at *page* 222)

In addition, the *Cobb* case was cited and relied upon in *Plaza.*

Thus, with respect to the present situation, it is necessary that the plaintiffs prove that their use was adverse or hostile. A user is adverse if done "under a claim of right, pursued with an intent to claim against the true owner in such circumstances of notoriety that the owner will be aware of the fact and thus alerted to resist the acquisition of the right by claimant before the period of adverse possession has elapsed." *Predham v. Holfester, supra,* 32 *N. J. Super.* at *page* 424. See also *A. J. & J. O. Pilar, Inc., v. Lister Corp.,* 22 *N. J.* 75, 81 (1956).

The enunciated legal principles presage. the result. First, the "free as the air" use of the lake from 1882 until at least 1921 must be deemed permissive. There is no evidence that any one who used the lake during that period did so under a claim of right.

The record reveals that of the 43 original plaintiffs who could by themselves, or by tacking the period of their

predecessors, show a user for the 20-year period, only one. Deiser, did not at one time or another belong to or pay dues to the association. As was stated in *A. J. & J. O. Pilar, Inc., v. Lister Corp., supra*, 22 *N. J.* at *page* 81, " 'a single lisp of acknowledgment by the [claimant] that he claims no title, fastens a character upon his position which makes it unavailable for ages.' "

Moreover, it is significant that in the parade of witnesses presented by the plaintiffs (including the plaintiff Deiser) who presented testimony concerning their use of the lake, not one claimed that he considered such use to be of right. There is a complete failure of evidence indicating the necessary hostility in the user. We therefore conclude that none of the plaintiffs has established a prescriptive right to use Culvers Lake for recreational purposes.

One last point remains to be considered. The judgment rendered by the court below which adjudicated title in the association contains a metes and bounds description of the lake. This description was taken from the 1921 deed from the Smiths to the Normanoch Association which, in turn, was taken from the Roome survey made in 1882. The plaintiffs, Millers and Peatfields, contended after the rendition of the judgment that portions of their property adjoining the lake, and therefore the access to it, became vested in the association because it came within the bounds of the description. They have filed a separate brief and directed their appeal to this question. These plaintiffs claim that the judgment declared title to lands not under the waters of Culvers Lake, whereas the pretrial order was limited to lands covered by the waters of the lake. See *R. R.* 4:29–1(*b*) ; *Schlossberg v. Jersey City Sewerage Authority*, 15 *N. J.* 360 (1954). The association, on the other hand, claims that the issue of title was tried at the trial and these plaintiffs must abide by the judgment.

We must consider whether the adjudication of title in the judgment below was appropriate or necessary. We have previously alluded to the fact that it was undisputed at the trial that the vast portion of the present boundaries of the

lake was in the defendant association. Clearly as to that portion, it was unnecessary to adjudicate title—it was not in issue. We concede that during the trial some question was raised as to whether certain of the plaintiffs had rights by deed to minute portions of the lake bed. But the thrust of the litigation was that the plaintiffs had acquired easements to use the lake, not that they had or claimed title to any substantial portion of it. The major controversy involved herein can be settled by the granting of injunctive relief restraining the plaintiffs from a general user of the lake.

Moreover it should be observed that the cause here was in the nature of a class action, and hardly an appropriate one for proving the exact bounds of the title of any particular plaintiff—witness the effect of the final judgment upon the plaintiffs, Millers and Peatfields.

We conclude that the adjudication of title was not a necessary concomitant of the judgment and should, in fairness to the parties adversely affected, be deleted. The defendant association, however, is entitled to appropriate injunctive relief restraining plaintiffs from entering upon all portions of the lake the title to which was not in dispute.

The judgment below is modified, and, as modified, is affirmed. The cause will be remanded to the Superior Court, Chancery Division, for the entry of judgment in accordance with this opinion.

No costs will be taxed to any party either at the trial or on appeal.

*For modification*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS and FRANCIS—6.

*Opposed*—None.