73 N.J. Super. 208 (1962)
179 A.2d 534
EMMA AGNES MEYERS (NEE EMMA AGNES FISHER) AND CHRISTOPHER MEYERS, SR., HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
FRANK PAVALKIS AND HELEN PAVALKIS, HIS WIFE, BRONIS DERZENASKI AND HELEN DERZENASKI, HIS WIFE, BENJAMIN C. GURNIK, ALFRED RINALDI, SINGLE, ANN MILLER, ANN M. ABRAMS, DOMENICK V. FONTANA, ALSO KNOWN AS DOMENICO FONTANA, AND JESSIE N. FONTANA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1962.
Decided March 16, 1962.
*209 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Michael G. Alenick argued the cause for appellants.
Mr. Matthew Krafte argued the cause for respondents (Mr. Krafte, attorney for respondents Pavalkis and Derzenaski; Mr. John S. Giava, attorney for respondent Alfred Rinaldi; Mr. Benjamin C. Gurnik, attorney pro se).
*210 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff Emma Agnes Meyers, nee Fisher  hereinafter Emma  brought an action seeking partition of two properties, commonly known as 170 and 172 Fleming Avenue (formerly Bowery Street), Newark, N.J., based on a claim that she was the owner of an undivided one-third interest therein. Her husband, Christopher Meyers, Sr., joined in the action by reason of an alleged inchoate right of curtesy. After a full trial, the Chancery Division judge entered judgment in favor of defendants. This appeal ensued. The facts are these:
Franz Henn, by will probated in 1906, devised the properties in question, together with a property at 19 Niagara Street, Newark, to his daughter Rose Fisher for life, and upon her death to her children, share and share alike. In 1921 Rose Fisher, together with her son Frank and daughter Freida, both of age and unmarried, conveyed the Fleming Avenue properties to Dominic Martorana. Emma, then only nine years old, neither joined nor was mentioned in the deed. Martorana entered into active possession of the properties, collected rents, paid taxes and made repairs. No one disputed his ownership. He and his wife conveyed to one Neuscheler in July 1929. Neuscheler reconveyed to the Martoranas on July 7, 1930. On that date the Martoranas mortgaged 170-172 Fleming Avenue, together with a number of adjoining properties, to one Schechner for $4,000. Schechner assigned the mortgage to the Fidelity Union Trust Co. in November 1932, and the bank, in turn, assigned it to Domenico Fontana in August 1933.
Rose Fisher, the life tenant named in the Henn will, died October 19, 1931. Plaintiff Emma became 21 on October 5, 1933. Fontana foreclosed the mortgage on the Fleming Avenue properties and obtained a final decree August 19, 1936. He was the successful bidder at the ensuing public sale. The sheriff's deed, executed and delivered to Fontana on December 28, 1936, was recorded soon after. On August 2, 1948 Fontana and his wife conveyed 170 Fleming Avenue *211 to defendants Frank Pavalkis and Bronis Derzenaski. Subsequently, on May 25, 1949, they conveyed 172 Fleming Avenue to defendant Rinaldi.
Defendant Gurnik is the holder of two mortgages given by Pavalkis, Derzenaski and their wives. Defendants Miller, Abrams and Fontana hold mortgages given by Rinaldi.
No one ever questioned Fontana's ownership of the properties, or the mortgage he had held on them for some three years before buying in at the foreclosure sale. As owner he paid taxes, made repairs and collected rents from those who occupied the houses.
At the time Pavalkis and Derzenaski purchased 170 Fleming Avenue from Fontana in 1948, it was a three-family house. They made extensive alterations and converted the first floor into a tavern, placed two mortgages with Gurnik and made payments thereon, paid taxes and collected the rents from the tenants living over the tavern. No one disputed their ownership. The same is true with Rinaldi's ownership of 172 Fleming Avenue. After acquiring title in 1949 he, too, made extensive alterations and converted the first floor into a restaurant, in the course of which he substantially enlarged the first floor by building back about 40 feet. He made other improvements to the property, including a new roof, a heating system, and shingling, paid taxes and collected the rents.
Neither Martorana nor any of his successors in title had any knowledge of Emma's alleged one-third interest. At the time he bought the property from Rose, Frank and Freida Fisher in 1921, he was represented by an attorney who had a search made. He did not know then, or subsequently, of any outstanding interest.
(There is nothing in the record which directly indicates why Emma's possible interest did not show up in the search. The search may not have been complete, or the existence of nine-year-old Emma not known. Another possibility is that Rose Fisher did not acknowledge Emma as her child. Although the answering defendants, by way of defense, alleged *212 that Emma was not Rose's child, their position at the trial was that they would present no proofs in support of that claim but would leave it to plaintiffs to establish the blood relationship. The defense was undoubtedly inspired by Rose's last will and testament, dated December 1, 1926. In that will Rose refers to herself as "Rose Fox (formerly Rose Fisher)." She left one-third of her residuary estate to her daughter Freida and one-third to her son Frank. She gave the remaining one-third "to the girl living with me and known as Emma Fisher." (We shall again refer to the will later on in this opinion.) The Chancery Division judge found as a fact that Emma was the daughter of Rose Fisher, later Rose Fox, and the judgment so recites.)
Martorana lived in one of the two properties until he lost them by foreclosure. Fontana, who succeeded him in ownership, lived next door to the properties for some 25 years and, as noted, no one had ever questioned his ownership. At the time he acquired the Martorana-Schechner mortgage he was represented by an attorney who had a search made of the property. There was nothing in that search to indicate that plaintiff Emma had any interest in the premises.
Pavalkis and Derzenaski, like their predecessors, also had their attorney make a search of the property before purchasing from Fontana. They were told that the title was clear. It was not until 1959, when Derzenaski applied to a bank for a loan to buy out his partner Pavalkis, that he learned there was some question in connection with the title.
Rinaldi also had a search made before purchasing 172 Fleming Avenue, and it was not until 1958, when he sought a loan for the purpose of consolidating the mortgages on the property, that he learned there was some question about the title.
Plaintiffs' partition action was filed May 31, 1960.
In holding against plaintiffs' claim and denying partition, the Chancery Division judge concluded that the 20-year *213 statute of limitations, N.J.S. 2A:14-6 and 7, applied, and this on the authority of Braue v. Fleck, 23 N.J. 1 (1956). He held that plaintiffs' claim stood barred because Emma had been free from disability for more than 20 years after arriving at the age of 21 in 1933, but had failed to bring suit to assert her claim. Defendants Pavalkis, Derzenaski and Rinaldi, and their predecessors in title, he found, had been in possession and exercised the full dominion and control of owners, and had held their respective properties adversely to plaintiffs for more than 20 years.
Plaintiffs claim that Emma's vested one-third remainder interest in the Fleming Avenue properties left her by her grandfather could not be obliterated by any claim of adverse possession, and this for the reason that she did not know of her remainder interest until 1959 when inquiry by Rinaldi's attorney led to an investigation which brought her grandfather's will to light. Further, and in any event, they assert that defendants failed to establish a right by adverse possession under the 20-year statute  it is the 30-year statute, N.J.S. 2A:14-30, which applies, and under that statute the full term of 30 years had not run when this partition action was brought.
We proceed on the basis of the trial judge's factual finding, not contested on this appeal, that plaintiff Emma was the daughter of Rose Fisher (later Rose Fox). Emma's one-third interest under her grandfather Henn's will could not have been affected until she became a remainderman in possession  that is, until her mother Rose died in October 1931. However, Emma was then only 19; she did not reach her majority until October 5, 1933. Adverse possession does not, of course, run against one who is legally an infant. N.J.S. 2A:14-21; Braue v. Fleck, above, 23 N.J., at page 21. Emma became a tenant in common with Martorana when her mother died. Martorana lost the Fleming Avenue properties  or more accurately, his interest therein  when the sheriff delivered his deed to Fontana *214 on December 28, 1936. Emma, as tenant in common, was then disseized. The 20-year statute began to run from that date. Braue v. Fleck, at pages 19-20; Content v. Dalton, 122 N.J. Eq. 425, 439 (E. & A. 1937).
It is familiar law that one who claims title by adverse possession has the burden of proving, by clear and convincing evidence, possession which is actual and exclusive, open and notorious, continued and uninterrupted, and adverse and hostile for the statutory period. DeBow v. Hatfield, 35 N.J. Super. 291, 297 (App. Div. 1955), certification denied 19 N.J. 327 (1955); Mulford v. Abott, 42 N.J. Super. 509, 512-513 (App. Div. 1956).
There can be no question whatever that the possession of Fontana under the sheriff's deed, as well as that of his successors in title, was actual and exclusive, open and notorious, continued and uninterrupted. It was also adverse and hostile because the possession was under a claim of right, with the intention to claim title against the true owner, and such that the owner knew or should have known that the disseizor intended to make title under it. Baker v. Normanoch Ass'n, Inc., 25 N.J. 407, 420 (1957); Mulford v. Abott, above, 42 N.J. Super., at page 513. See 5 Thompson, Real Property (1957 replacem.), § 2548, p. 542; 6 Powell, Real Property, §§ 1015, 1017, 1018, pp. 720, 727, 730 (1958).
The property under consideration in Baker was a lake. In the case of vacant or unimproved land the presumption of a permissive or non-hostile use arises, but as regards improved land (as here) a presumption of hostile and adverse possession comes into play. Plaza v. Flak, 7 N.J. 215, 221 (1951); Baker v. Normanoch, above, 25 N.J., at page 420. New Jersey's adherence to the twin presumptions  depending upon the character of the property and its use  made available to plaintiffs a number of possible defenses, set forth in the following quotation from the Plaza case, 7 N.J., at pages 220-221. (Although that case dealt with the right to an easement by prescription, what was said there (at *215 page 219) is pertinent and applicable in a case where title by adverse possession is asserted. See also, the Baker case, 25 N.J., at page 419.)
"From an early period in this State, although the burden of proof of the elements of prescription is upon the party claiming the right to an easement by prescription, it has been held that a presumption of adverse use arises from uninterrupted user of 20 years or more, and the burden is then upon the opposing party to rebut the presumption. This he may do by [1] contradicting or explaining the facts upon which it rests, but not by proof in denial of a grant, i.e., the grant assumed in the fiction of prescription, or [2] he may prove the use was contentious or interrupted during the period of prescription. He may overcome the presumption of adverse use and the right to the easement arising therefrom by [3] proof of permission asked and granted, [4] that it was a secret user, or [5] that it was such use as to be neither physically capable of prevention or of action. [citing cases and authorities] * * *." (Bracketed material ours)
Plaintiffs established none of the five possible rebuttals, and therefore the presumption of hostile and adverse user stands.
Fontana and his successors in ownership claimed title to improved property against the world, including plaintiffs. They recorded their deeds, mortgaged the fee in their own names, and treated the property as their own for over 20 years. This is not a case  e.g., Predham v. Holfester, 32 N.J. Super. 419 (App. Div. 1954)  where the occupier had no intention to occupy more land than he owned. Here defendants claimed ownership of the entire fee, and their actions clearly evinced an intention to occupy and enjoy the entire premises as against anyone's claim to the contrary.
Braue v. Fleck, 23 N.J. 1 (1956), on which the trial judge relied, is similar enough on its facts to be considered apposite in the setting of this case.
A word about plaintiffs' claim that Emma had no knowledge of her interest in the properties until 1959. Her mother, Rose Fisher (later Fox), by her will of December 1, 1926, provided, in part:
"4. I give, devise and bequeath another one-third part and share of all said rest, residue and remainder of my property to the girl *216 living with me and known as Emma Fisher provided, however, that she execute and deliver, when she becomes of age, a proper quit-claim deed of property on Niagara Street, Newark, N.J. which I and others recently sold to Adam Schwartz and wife, and do so without cost, and also release property of one D. Martorano, if asked so to do, and if such deeds of release are requested and not freely given by said Emma Fisher, to settle any question in said title, then she is not to receive anything from my estate." (Italics ours)
The Niagara Street property was the one at No. 19, devised by Franz Henn to his daughter Rose for life and then to her children, along with the Fleming Avenue properties. Despite her insistence at the trial that she did not know of her mother's will, Emma and her husband executed a quitclaim deed conveying their rights to the Niagara Street property in 1934, receiving a consideration therefor. Further, in May 1933 she filed a petition with the Essex County Orphans Court which stated that she was the daughter of Rose Fox, deceased; that Rose Fox's will had been admitted to probate on December 1, 1931 and letters testamentary issued to Frank Fisher, the executor named therein, and that he had qualified as executor but had failed and neglected to state and settle his account within the time specified by law. She prayed that he be required to file his account. An order to show cause to compel the executor to file his inventory and account was duly entered.
The quitclaim deed to the Niagara Street property and the filing of the petition in the Orphans Court clearly establish that plaintiff, despite her insistence to the contrary, did know of her mother's will, with its reference to the property held by Martorana. The will was notice to her of a possible interest in Martorana's property, namely 170-172 Fleming Avenue. We find Emma's protestations of ignorance as to her rights unbelievable. We are not impressed by her denial of the purpose of giving the quitclaim deed, of having filed the petition for an accounting, or  to mention one thing which is completely incredible  her denial of all knowledge that her mother was known as Rose Fox, the name used in Rose's will, and to which Emma referred in *217 her Orphans Court petition. Although actual notice, or lack of notice, in Emma is of no consequence to our determination that defendants have title by adverse possession under the 20-year statute, we have devoted the latter part of our opinion to showing that Emma knew or should have known that those in ownership and possession of the premises in question claimed title in themselves as against her and the whole world.
Affirmed.