**UNITED STATES of America, Plaintiff,**

v.

**GOODRICH FARMS PARTNERSHIP, Defendant.**

**No. 90–C–710.**

United States District Court, D. Colorado.

Jan. 9, 1991.

Chalk Mitchell, Asst. U.S. Atty., Denver, Colo., for plaintiff.

Hans Johnson, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff, the United States, commenced this declaratory judgment action to quiet title to property in Morgan County, Colorado. Defendant, Goodrich Farms Partnership, which owns land abutting the plaintiff's property, has erected a fence where it contends the true property line lies. Plaintiff disputes the boundary. The matter, before me on cross-motions for summary judgment, is ripe for decision. The parties have fully briefed the issues and oral argument would not facilitate decision. Jurisdiction is founded on 28 U.S.C. § 1345.

I. *Factual Background.*

The following facts are undisputed. Prior to July 17, 1962, three brothers, James L. Cook, George E. Cook and George S. Cook as joint tenants, owned a parcel of land in Morgan County, Colorado. Located on the property is a ditch, referred to by the parties as the "Jackson Lake Inlet Ditch." The brothers decided to divide the property, and on July 17, 1962, they executed two deeds, one conveying the northern portion to James Cook and George S. Cook, and the other conveying the southern portion to George E. Cook. In pertinent part, the July 17, 1962 deeds described the property as:

"That part of the North Half (N½), the Southeast Quarter (SE¼) and the Southeast Quarter of the Southwest Quarter (SE¼SW¼) of Section Thirty-three (33), and the South Half (S½) of Section Twenty-eight (28), Township Five (5) North,

Range Sixty (60) West of the Sixth (6th) Principal Meridian, *lying south of the Jackson Lake Inlet Ditch....*"

and

"All that part *lying north of the Jackson Lake Inlet Ditch.*" (Emphasis added).

The meaning of the underlined words constitutes the issue in this litigation.

On April 15, 1975, James Cook and George S. Cook conveyed their interest in the northern portion to Kenneth V. Dixon Jr., W. Morgan Oakes and Paul R. Thayer. On June 11, 1975, Dixon, Morgan and Thayer conveyed their interest to the defendant. George E. Cook conveyed his interest in the southern half of the property to the United States on February 4, 1977. To describe the respective properties being conveyed, each conveyance used language similar to that quoted above.

In its motion for summary judgment, the plaintiff asserts that because the deed uses the ditch, a non-navigable waterway, as a boundary, its property line extends to the middle, or the "thread" of the ditch. In its cross-motion, the defendant asserts that none of the conveyances included the ditch and, therefore, the Cooks owned the ditch as joint tenants until August 22, 1988. On that date, George E. Cook and George S. Cook[1] executed a quit claim deed purportedly conveying the ditch to the defendant.

## II. *Analysis.*

In *Hanlon v. Hobson,* 24 Colo. 284, 51 P. 433 (1897), the Colorado Supreme Court interpreted a deed that described the property there conveyed in language almost identical to that here at issue. Moreover, counsels' arguments in today's case echo those put forth in *Hanlon* nearly a century ago. The *Hanlon* opinion noted:

"Counsel says that the controlling words are, 'lying on the south side of the river.' The argument is that this means that the land lies on the south margin of the stream, that its boundary is the bank, and that the effect is the same as would be if the words were, 'up the west bank,' which, in *Murphy v. Copeland,* 51 Iowa

515, 1 N.W. 691, the court held, restricted the boundary to the bank of the designated stream. We cannot agree with counsel as to this. He interprets this language as though it meant, 'lying south of the river bank.' This is a forced interpretation. The language means just what it says, viz. 'lying on the south side of the river,' with the river itself as its boundary, not south of the south side. It is clear, from this language alone, that the river was intended as the boundary." *Id.* 24 Colo. at 289, 51 P. 433.

Similarly in the instant case, the boundary is the ditch, and therefore the result must follow the *Hanlon* precedent.

While "a lot of water has flowed" through the ditch in the intervening decades, the law of Colorado has remained stationary: if a nonnavigable stream, such as the ditch, is described as a boundary or a monument in a deed conveying land bordered by that nonnavigable stream, the conveyance includes the streams's bed to its center. *Id.* The "thread of the stream rule" applies with equal force to ditches. *See White v. Woodard,* 227 N.C. 332, 42 S.E.2d 94 (1947); *see also Travis Co. v. Coral Gables,* 153 So.2d 750 (Fla.Dist.Ct. App.1963) (applying rule to canals) and *Baker v. Normanoch Asso.,* 25 N.J. 407, 136 A.2d 645 (1957) (applying rule to lakes). Thus, I conclude that each above described conveyance of the property here in dispute included as one property line of the deeded property the middle of the ditch.

Accordingly IT IS ORDERED that:

(1) Defendant's motion for summary judgment is denied;

(2) Plaintiff's cross-motion for summary judgment is granted;

(3) The boundary between the plaintiff's property and the defendant's property is the center line of the Jackson Lake Inlet Ditch;

(4) Each party is entitled to the land on its side of the ditch and the adjacent one-half of the ditch;

---

1. James Cook died prior to August 22, 1988. Thus, the defendant claims that George E. Cook and George S. Cook were the ditch's exclusive owners.

(5) Within 120 days, the defendant shall remove the fence it erected on the south bank of the Jackson Inlet Stream;

(6) If the defendant fails to remove the fence within 120 days, the plaintiff may remove it, and in that event it is ordered that;

(7) Defendant forthwith shall pay the plaintiff the reasonable cost of removing the fence;

(8) Defendant, its heirs, agents and assigns shall cease and desist from any further use of the plaintiff's land; and

(9) Each party shall bear its own costs.